Robert Edwin VAUGHN, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2006–CA–000901–MR.

Court of Appeals of Kentucky.

Feb. 15, 2008.

Discretionary Review Denied by Supreme Court Aug. 13, 2008.

Brian Thomas Ruff, Assistant Public Advocate, LaGrange, KY, for appellant.

Gregory D. Stumbo, Attorney General of Kentucky, Bryan D. Morrow, Assistant Attorney General, Frankfort, KY, for appellee.

Before COMBS, Chief Judge; ACREE and TAYLOR, Judges.

*OPINION*

ACREE, Judge.

Robert Vaughn appeals from an order of the Jefferson Circuit Court denying his request for post-conviction relief pursuant to Ky. R.Crim. P. (RCr) 11.42. He alleges defense counsel was ineffective for advising him to plead guilty to murder fifty-two days after he killed his estranged wife, rather than pursuing a defense of extreme emotional disturbance at trial. Further, he claims the trial court lacked the authority to impose the agreed-upon sentence of life without the possibility of parole in the absence of a jury determination of the existence of statutory aggravators under Kentucky Revised Statute (KRS) 532.025(3). After a careful review, we disagree and affirm the trial court.

Vaughn and his wife, Brenda, were involved in a twenty-four year romantic relationship and were the parents of three children, aged sixteen to twenty-two. The pair had not actually married until all of their children were born. After nine and a half years of marriage, Brenda left Vaughn due to his excessive use of drugs and alcohol. After they separated, Brenda and Vaughn continued to date for a while. However, Vaughn responded to the break-up of his marriage by consuming drugs and alcohol on a daily basis, staying awake for days at a time, and spending periods of time alone crying. Brenda called Vaughn on January 6, 2003, his birthday, and asked him to stop by her place of employment. Expecting that they would go out and celebrate, he was met instead by his wife telling him that she no longer wished to see him. During the ensuing argument, Vaughn became so upset that Brenda told him he was scaring her. Afterwards, Vaughn's boss told him to take a week off to collect himself.

On January 12, 2003, at 4:30 a.m., Vaughn called Brenda making comments that seemed to her suicidal. He then slashed a tire on her car while she was watching. In a phone call that immediately followed the tire slashing incident, Vaughn told Brenda it was not over. She sought and obtained an Emergency Protective Order (EPO) to protect herself from him. Vaughn's niece informed him about the EPO later that day.

The following night, Vaughn began drinking and using drugs while playing pool with his oldest son. After a while, he retrieved two handguns from his closet and left, headed for Brenda's apartment. Brenda was living with her niece and minor son. However, when Vaughn arrived the two women were alone in the apartment. Brenda was preparing to go to bed, while her niece was using the computer in the same room. The Vaughns' oldest son called his mother and warned her that his father had just left home armed. Brenda's niece wanted her to call the police immediately, but Brenda refused, stating that she would watch for Vaughn's truck and make the call as soon as she saw it.

Unfortunately, when Brenda opened the bedroom door, she saw Vaughn had already entered the apartment. He came into the bedroom, told her he hoped she

was happy, and began firing. The first shot hit Brenda, knocking her to the floor. Vaughn shot her six more times, killing her, then fled the scene. He called two people, telling them he had killed his wife and was going on the run. While driving toward Nashville, he threw the gun into a creek. He was arrested the next day in Louisville and agreed to make a statement to police. He admitted killing Brenda and told police he did not remember where he disposed of the gun. He stated that they did not need to recover the gun because he committed the crime and needed to die as a consequence of taking Brenda's life.

The grand jury indicted Vaughn on charges of murder, first-degree burglary, and tampering with physical evidence. At both his arraignment and his first meeting with his attorney at the jail, Vaughn stated a desire to plead guilty and be sentenced to death. Vaughn was appointed two capital trial attorneys to handle his case. Defense counsel requested a psychiatric evaluation which was conducted by a licensed psychologist. In his report, the psychologist, while expressing some concern about his depression and its impact on his ability to consider all of his options, found Vaughn competent to participate in his own defense. Defense counsel negotiated a plea agreement, and Vaughn pleaded guilty to the charges in the indictment in exchange for a sentencing recommendation of life without the possibility of parole.

Some two years after he was sentenced, Vaughn filed a *pro se* RCr 11.42 motion alleging five areas in which he received ineffective assistance of counsel. The trial court appointed counsel to supplement Vaughn's post-conviction motion. The two main issues were the possible existence of an extreme emotional disturbance defense to the murder charge and a challenge to the trial court's authority to impose an enhanced sentence without a jury finding of statutory aggravators. The trial court denied the motion without an evidentiary hearing, and this appeal followed.

■ On appeal, Vaughn presents three issues for our consideration. He first argues defense counsel was ineffective for advising him to plead guilty to murder, rather than presenting an extreme emotional disturbance defense which could have resulted in a conviction of first-degree manslaughter. Next, he claims that *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), prohibits a trial judge from imposing an enhanced sentence absent a jury's finding, beyond a reasonable doubt, of the existence of statutory aggravators. Finally, he argues the trial court erroneously denied him an evidentiary hearing on his RCr 11.42 motion. The test for ineffective assistance of counsel was set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and more recently articulated in *Fraser v. Commonwealth,* 59 S.W.3d 448, 456–57 (Ky.2001)

> The two-pronged test for ineffective assistance of counsel is (1) whether counsel made errors so serious that he was not functioning as "counsel" guaranteed by the Sixth Amendment, and (2) whether the deficient performance prejudiced the defense.

Because he pleaded guilty, Vaughn is required to show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

■ Vaughn argues defense counsel failed to investigate and prepare for trial. His argument focuses on his contention that he would have been entitled to a jury instruction on extreme emotional disturbance. Vaughn claims evidence at trial

would have shown his emotional reaction to Brenda's decision that they no longer needed to see one another and her act of obtaining an EPO against him, coupled with his abuse of alcohol and illegal drugs, were the catalysts prompting his homicidal actions. In *McClellan v. Commonwealth*, 715 S.W.2d 464 (Ky.1986), our Kentucky Supreme Court defined extreme emotional disturbance as "a temporary state of mind so enraged, inflamed, or disturbed as to overcome one's judgment, and to cause one to act uncontrollably from the impelling force of the extreme emotional disturbance rather than from evil or malicious purposes." Id. at 468–69. Further, "extreme emotional disturbance requires reasonable justification only for the emotional disturbance[ ]" because, rather than being an absolute defense, it "merely reduces the degree of the offense." *Engler v. Commonwealth*, 627 S.W.2d 582, 584 (Ky.1982). Vaughn makes a persuasive case that defense counsel would have been able to introduce sufficient evidence to support the giving of a jury instruction on extreme emotional disturbance.

■ Our inquiry, however, does not end simply because the defense of extreme emotional disturbance could have been pursued at trial. Vaughn attempts to characterize this issue as an allegation that his attorney failed to prepare a defense strategy for trial. However, his decision to plead guilty shifts the focus of our review from allegations of lack of preparation to the reasonableness of counsel's advice. "[T]he effect of entering a voluntary guilty plea is to waive all defenses other than that the indictment charges no offense." *Centers v. Commonwealth*, 799 S.W.2d 51, 55 (Ky.App.1990) (citation omitted). The trial court in this case engaged Vaughn in a colloquy at the time of the guilty plea in order to ascertain that he understood his constitutional rights and

wished to waive them by pleading guilty to the charges against him.

Vaughn, noting that he cried throughout the plea colloquy, contends that his behavior was indicative of his depressed state of mind at the time of the crime and when he pleaded guilty fifty-two days later. However, in *Centers*, this Court stated "[t]he trial court is in the best position to determine if there was any reluctance, misunderstanding, involuntariness, or incompetence to plead guilty." *Centers*, 799 S.W.2d at 54 (Ky.App.1990) (citation omitted). Honorable Thomas B. Wine, in his order denying Vaughn's post-conviction motion, responded to this same argument on Vaughn's behalf by stating

> [T]his Court has taken thousands of pleas from defendants on less serious charges than Vaughn faced and has seen the same emotional display as Vaughn showed on March 10, 2003. Nobody embraces any amount of time in the penitentiary, versus freedom, with relish or joy.

Thus, Vaughn's demeanor alone at the time of his plea is insufficient evidence that his guilty plea was involuntary.

■ In order to be valid, a guilty plea in a criminal case must represent a meaningful choice between the probable outcome at trial and the more certain outcome offered by the plea agreement.

> Because "[a] multitude of events occur in the course of a criminal proceeding which might influence a defendant to plead guilty or stand trial," the trial court must evaluate whether errors by trial counsel significantly influenced the defendant's decision to plead guilty in a manner which gives the trial court reason to doubt the voluntariness and validity of the plea.

*Bronk v. Commonwealth*, 58 S.W.3d 482, 487 (Ky.2001) (citation omitted). Vaughn pleaded guilty to murder, first-degree bur-

glary, and tampering with physical evidence. Kentucky Revised Statute (KRS) 532.030(1) fixes the punishment which may be imposed for capital offenses at death, life without the possibility of probation, life without the possibility of parole for twenty-five years, life, or twenty to fifty years. Not all capital offenses, however, are death eligible. Before a judge can impose a sentence of death, life without the possibility or parole, or life without the possibility of parole for twenty-five years, KRS 532.025(2) requires that mitigating and aggravating circumstances be considered. KRS 532.025(2)(a)(2) specifically lists murder committed during the commission of first-degree burglary as an aggravating factor. Thus, it is reasonable to conclude that both Vaughn and defense counsel believed there was a possibility of a jury recommending a death sentence in his case.

■ Our appellate courts have firmly opined that a recommendation by defense counsel to plead guilty in a given case is no indication of ineffective assistance. *Beecham v. Commonwealth*, 657 S.W.2d 234, 236–37 (Ky.1983). The evidence of Vaughn's guilt was strong. An eyewitness saw him shoot Brenda. He spoke with two people on the phone afterwards and told them what he had done. He confessed to police and stated he deserved to die. He tried to plead guilty and request a death sentence at his arraignment. The fact that defense counsel could have introduced enough evidence at trial to support an extreme emotional disturbance instruction does not imply that a jury would have been likely to accept it. Vaughn argues that the facts of his case do not support the belief of a reasonable attorney that his client was at risk of the death penalty. We find this argument unpersuasive. "Judicial review of the performance of defense counsel must be very deferential to counsel.... There is always a strong presump-

tion that the conduct of counsel falls within the wide range of reasonable professional assistance...." *Hodge v. Commonwealth*, 116 S.W.3d 463, 469 (Ky.2003).

Simply put, Vaughn has not met his burden of proving that his guilty plea was involuntary merely because he could have gambled on a jury's willingness to find extreme emotional disturbance.

■ Vaughn next argues that his rights to due process and equal protection were violated by his sentencing to an enhanced penalty without a jury under the *Apprendi* decision. The United States Supreme Court in *Apprendi* was faced with a defendant who pleaded guilty to shooting into the home of an African–American family who had recently moved into his previously all-white neighborhood. State law provided for an enhanced penalty for crimes committed for the purposes of intimidating an individual because of race, color, gender, handicap, religion, sexual orientation, or ethnicity. Whether or not to apply this hate crime enhancer was determined by the trial judge, by a preponderance of the evidence, at the time of sentencing. While he admitted to shooting into his neighbors' home, Apprendi strenuously denied having any racial bias. Nevertheless, the trial judge found that his acts qualified as a hate crime and enhanced his sentence. The Supreme Court found that Apprendi's enhanced sentence violated his constitutional rights because the trial judge's factual determination increased the penalty to which the defendant's conduct subjected him. "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348 (2000). In the case at hand, Judge Wine correctly

distinguished the *Apprendi* holding, noting that Vaughn was not sentenced to a penalty that exceeded the maximum penalty prescribed by KRS 532.030(1). The plea agreement with the Commonwealth called for a recommended sentence of life without the possibility of parole. The statute, however, allowed for the most serious penalty which our justice system is capable of imposing: death.

■ RCr 9.84(2) states that, when a defendant pleads guilty his punishment shall be fixed by the trial court "except that in cases involving offenses punishable by death the defendant may demand that his or her punishment be fixed by the jury." Vaughn made no demand for jury sentencing. In fact, he actually waived preparation of a presentencing report. Further, the Kentucky Supreme Court recently determined that a defendant in a capital case can waive jury sentencing, even when the plea agreement calls for imposition of the death penalty. *Chapman v. Commonwealth,* —— S.W.3d ——, 2007 WL 2404429 (Ky.2007).

■ In his final argument, Vaughn claims the trial court erred by denying his RCr 11.42 motion without an evidentiary hearing. We disagree. A hearing is required only "if there is a material issue of fact that cannot be conclusively resolved ... by an examination of the record." *Fraser,* 59 S.W.3d at 452. The trial court correctly determined that Vaughn's claims could be resolved by reference to the record; thus, no hearing was necessary.

For the foregoing reasons, the judgment of the Jefferson Circuit Court is affirmed.

ALL CONCUR.