**COMMONWEALTH of Kentucky,
Appellant**

v.

**Thomas ELZA, Jr., Appellee.**

No. 2007–SC–000538–DG.

Supreme Court of Kentucky.

May 21, 2009.

Jack Conway, Attorney General, Kenneth Wayne Riggs, Assistant Attorney General, Frankfort, KY, Counsel for Appellant.

Thomas Elza, Jr., St. Mary, KY, pro se.

Opinion of the Court by Justice CUNNINGHAM.

Appellee, Thomas Elza, Jr., moved the Laurel Circuit Court for post-conviction relief pursuant to RCr 11.42, alleging that his plea of guilty to the charges of murder and burglary in the first degree was involuntary. Elza admitted that he broke into the home of Pauline Rey, the mother of his ex-girlfriend, and choked her to death in front of her two young grandchildren. Crystal Rey, Elza's ex-girlfriend, was also present while the murder occurred, simultaneously trying to stop Elza while protecting her two children. After killing Pauline, Elza kidnapped Crystal by dragging her from the home as she pleaded for her

children. He took her to a nearby wooded area, tied her to a tree, and left.

The trial court denied the motion for post-conviction relief without conducting an evidentiary hearing. Elza appealed, and the Court of Appeals remanded the matter to the trial court for an evidentiary hearing. Upon the Commonwealth's motion, this Court granted discretionary review.

In his RCr 11.42 motion, Elza claimed that his plea of guilty was not voluntary and intelligent, and that it was the product of ineffective assistance of counsel. Elza's motion is based on the claim that he was so intoxicated at the time of the murder that he could not have formed the requisite intent to commit either murder or burglary in the first degree. He asserts that his counsel failed to inform him that his intoxication could possibly provide a defense to the charges or result in conviction of a lesser degree of homicide.

In support of the motion, Elza submitted reports of mental evaluations conducted prior to his plea. The first evaluation was ordered by the circuit court upon petition of a Laurel County deputy jailer who noted that Elza, before being apprehended for Rey's murder, had attempted to kill himself. In the report, Elza is deemed competent to stand trial, but the evaluating psychologist would not give an opinion on Elza's criminal responsibility because Elza reported, "my lawyer told me not to talk about [the crimes]."

Elza underwent a second evaluation by a defense expert psychologist. This report recounts Elza's long-time use of methamphetamines and notes his lack of any memory of the crimes. The evaluating psychologist concluded that Elza was in a drug-altered state at the time of the crimes and was unable to differentiate between right and wrong and was unable to conform his conduct to the law.

Elza claims that the reports of these evaluations clearly support an intoxication defense to the murder and burglary charges. Had he known the existence and strength of his intoxication defense, Elza asserts he would have insisted on going to trial. Further, Elza stated in his motion that counsel coerced him into accepting the plea agreement through "emotional manipulation." He did not file an affidavit in support of this claim. Rather, he simply states in his *pro se* motion that defense counsel "made [him] feel like [he] was getting a special deal" and that a jury would "most assuredly" give him the death penalty.

■ The Court of Appeals determined that the trial court erred in denying Elza an evidentiary hearing. An evidentiary hearing should be conducted when a "material issue of fact that cannot be determined on the face of the record" has been raised. RCr 11.42(5). "A hearing is required if there is a material issue of fact that cannot be conclusively resolved, i.e., conclusively proved or disproved, by an examination of the record." *Fraser v. Commonwealth*, 59 S.W.3d 448, 452 (Ky. 2001).

■ In his motion for post-conviction relief, Elza argued that his guilty plea was constitutionally defective because it was the product of his attorney's coercion and failure to pursue an intoxication defense. In order to prove ineffective assistance of counsel where a guilty plea has been entered, the movant must establish:

(1) that counsel made errors so serious that counsel's performance fell outside the wide range of professionally competent assistance; and (2) that the deficient performance so seriously affected the outcome of the plea process that, but for the errors of counsel, there is a reasonable probability that the defen-

dant would not have pleaded guilty, but would have insisted on going to trial. *Bronk v. Commonwealth*, 58 S.W.3d 482, 486–87 (Ky.2001) (considering claim of ineffective assistance of counsel brought pursuant to RCr 8.10 motion to withdraw a guilty plea). "[T]he trial court must evaluate whether errors by trial counsel significantly influenced the defendant's decision to plead guilty in a manner which gives the trial court reason to doubt the voluntariness and validity of the plea." *Id.* at 487.

▆▆▆▆ Elza insists that the evidence supporting an intoxication defense was very strong, and that his attorney was ineffective for recommending a plea agreement in light of that sustainable defense. Our analysis, however, must begin with the voluntariness of his guilty plea. This is because the effect of a valid plea of guilty is to waive all defenses other than that the indictment charges no offense. *Quarles v. Commonwealth*, 456 S.W.2d 693, 694 (Ky. 1970). We determine the voluntariness of the plea from the "totality of the circumstances." *Rodriguez v. Commonwealth*, 87 S.W.3d 8, 10–11 (Ky.2002). In doing so, we "juxtapose the presumption of voluntariness inherent in a proper plea colloquy with a *Strickland v. Washington* inquiry into the performance of counsel." *Bronk*, 58 S.W.3d at 486.

▆▆▆▆ The trial court initially determined the voluntariness of Elza's guilty plea during the thorough colloquy conducted pursuant to *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Elza described, in his own words, what happened when he killed Pauline Rey. He explained that he entered Rey's residence with the purpose of "getting into an altercation with her"; that he hit Rey; and that he strangled Rey to death. Not only are such admissions made in open court afforded much credence, but Elza's description completely refutes the current claim that he has no memory of the crimes. *See Edmonds v. Commonwealth*, 189 S.W.3d 558, 569 (Ky.2006) ("Solemn declarations in open court carry a strong presumption of verity.")

Elza stated that he was satisfied with his attorney, and that counsel had fully explained the defenses available to him. He denied that he had been coerced or induced to accept the plea agreement. He stated that he was not under the influence of any mind-altering substance or medication that would inhibit his ability to understand the guilty plea proceedings. He stated that he had never been diagnosed with a mental disease that would affect his ability to reason or understand the proceedings against him. He appeared coherent, engaged, and involved during the colloquy. Elza signed the motion to enter a guilty plea (AOC form 491) and indicated that he read and understood its contents.

Having found no indication from the plea colloquy to negate the presumption that Elza's plea was voluntary, we turn to counsel's performance. The Commonwealth notified Elza prior to the guilty plea of its intention to proceed with capital punishment, citing the first-degree burglary aggravator enumerated at KRS 532.025(2)(a)(2) as a basis. Thus, Elza faced a maximum punishment of death and a minimum punishment of imprisonment for twenty years. *See* KRS 532.030(1). Defense counsel engaged in extensive motion practice in an effort to remove the death penalty as a possible sentence. The Commonwealth vigorously opposed each motion, illustrating its intent to seek capital punishment. In light of these circumstances, the plea accepted by Elza was reasonable. By pleading guilty, Elza avoided the death penalty. In addition, two remaining felony counts (kidnapping and retaliation against a participant in the legal process) and two remaining misde-

meanor counts (wanton endangerment in the second degree) were dismissed. *See Commonwealth v. Campbell*, 415 S.W.2d 614 (Ky.1967) (no ineffective assistance of counsel where defendant was advised to accept a reasonable plea agreement).

"[W]here the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Here, the record offers little indication that a defense of intoxication would have succeeded. The evidence of Elza's guilt was overwhelming and included the damning testimony of his ex-girlfriend who witnessed the entire crime. There was little hope of juror sympathy, as two young children watched Elza brutally murder their grandmother and then violently drag their mother from the home. Thus, we find no likelihood that the intoxication defense, had it been presented to a jury, would have succeeded in exonerating Elza.

"In order to be valid, a guilty plea in a criminal case must represent a meaningful choice between the probable outcome at trial and the more certain outcome offered by the plea agreement." *Vaughn*, 258 S.W.3d 435, 439 (Ky.App.2008). *See also North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). In light of the uncertainties Elza potentially faced at trial, including the death penalty, it appears a meaningful choice was made.

The record before the trial court conclusively refutes the assertion that Elza's guilty plea was involuntary. His statements and demeanor at the plea colloquy belie any contention that he was coerced into pleading guilty. Further, Elza has failed to make even a threshold showing that defense counsel's performance was deficient in any manner. His claim that defense counsel told him he would "assuredly" receive the death penalty does not amount to coercion. Rather, the record establishes that defense counsel's advice was reasonable, as the Commonwealth repeatedly and successfully defended any attempt to remove the case from capital punishment eligibility.

For these reasons, an evidentiary hearing was not required in this case. We have recognized that an evidentiary hearing is often necessary in cases where a defendant claims his plea was involuntary due to counsel's ineffective assistance in order to determine "what transpired between attorney and client[.]" *Rodriguez*, 87 S.W.3d at 10. However, here, Elza filed no affidavits in support of his claim of coercion and did not identify any particular instance of the alleged manipulation other than defense counsel's truthful warning that the death penalty was a very real possibility. Furthermore, as detailed above, the record clearly establishes that Elza's guilty plea was voluntary, and that the plea agreement was reasonable in light of the circumstances. "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Edmonds*, 189 S.W.3d at 569, *quoting Blackledge v. Allison*, 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). The trial court properly rejected Elza's motion without conducting an evidentiary hearing.

The opinion of the Court of Appeals is reversed and the judgment of the Laurel Circuit Court is hereby reinstated.

All sitting. All concur.