Jae H. PARK, Appellant

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2010–CA–000712–MR.

Court of Appeals of Kentucky.

March 16, 2012.

Discretionary Review Denied by Supreme Court Aug. 21, 2013.

M. Brooke Buchanan, Frankfort, KY, for appellant.

Jack Conway, Attorney General of Kentucky, Bryan D. Morrow, Assistant Attorney General, Frankfort, KY, for appellee.

Before KELLER, STUMBO, and VANMETER, Judges.

## OPINION

KELLER, Judge:

Jae H. Park (Park) appeals from the circuit court's denial, without a hearing, of his combined Kentucky Rule of Criminal Procedure (RCr) 11.42 and Kentucky Rule of Civil Procedure (CR) 60.02 motion to set aside his guilty plea and conviction. Park argues that the trial court erred when it denied his motion for an evidentiary hearing on his RCr 11.42 allegation that counsel failed to advise him of the defense of extreme emotional disturbance (EED). According to Park, if counsel had advised him of that possible defense, he would not have entered a guilty plea but would have insisted on proceeding to trial. Having reviewed the record, we affirm.

## FACTS

In the early morning hours of November 4, 2003, Park shot and killed his wife, Seo. After he shot Seo, Park called 911 and told the dispatcher that he had shot his wife. Police officers arrived at the scene shortly thereafter and took Park into custody. After advising Park of his *Miranda*[1] rights, a detective questioned Park. The following information is from Park's recorded statement.

In 1995, Park and Seo married. They had no children together; but Seo had an

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

eleven-year-old daughter from a prior relationship. The daughter lived in South Korea until May 2003, when she came to the United States to live with Park and Seo. According to Park, the couple had a significant amount of business and credit card debt; Seo had been involved in several short-term extra-marital affairs and one ongoing affair; and she had a gambling problem. In the fall of 2003, Park filed for dissolution of the couple's marriage; however, they continued living together.

At some point, Seo obtained records regarding a whole life insurance policy that was in her name, with her daughter as the beneficiary. Seo accused Park of either taking money from the policy or failing to make all of the required premium payments. Seo also accused Park of transferring his credit card debt to her accounts. Park told Seo that he could not have taken money from the insurance policy and that he had not transferred any debt to her credit card accounts. However, she did not believe him and, on the afternoon of November 3, 2003, Seo called Park from her work place and accused him of taking the insurance money. The couple argued over the telephone several times that afternoon and, when Seo got home at approximately 1:30 a.m. on November 4, 2003, she woke Park to continue the argument.

The couple went into the living room. Park tried to reason with Seo. However, she kept yelling at him, and he got "so pissed off" that he hit her. She continued to argue with him, and he went into his office, got a handgun, and, because he was "so pissed off," he cocked the gun before returning to the living room. Seo, when she realized Park had a gun, said, "if you do not kill me, I will kill you." Park stated that he shot her because he had "lost patience" and was "over the limit."

When Park shot Seo, her daughter was in the living room and she witnessed the shooting. Park described to the detective where he, Seo, and her daughter were when he shot Seo; how Seo reacted when he pointed the gun at her; and how she fell after he shot her.

Based on Park's statement/confession, the evidence gathered at the scene, and a statement from Seo's daughter, a grand jury indicted Park for murder. During the following two years, Park filed two motions to suppress his statement, arguing that he had not knowingly, voluntarily, and intelligently waived his *Miranda* rights. These motions primarily rested on Park's argument that, because English was not his native language, he did not understand what rights he was waiving.

In support of his argument, Park introduced the report and testimony of Eric Y. Drogin, J.D., Ph.D. Dr. Drogin testified that Park had a limited understanding of English, which impeded his ability to understand what rights he was waiving when he agreed to be interviewed by a detective. Because of what Dr. Drogin perceived as Park's language deficits, Dr. Drogin indicated that Park would need to be further evaluated by someone fluent in the Korean language and culture. Although not specifically related to the language issue, Dr. Drogin offered his opinion that, "A defense of extreme emotional disturbance may be at issue in this case. Obviously, that's not my call, and I'm not the attorney."

The Commonwealth then introduced testimony from J. Robert Noonan, Ph.D., who had conducted a competency evaluation of Park. Dr. Noonan testified that he interviewed Park two times at the jail. During those interviews, there were some communication problems; however, Dr. Noonan did not attribute those problems to any significant deficits in Park's ability to com-

prehend English but to the ambient noise at the jail and Park's soft speech patterns.

We note that Park was present, with an interpreter, during the testimony of Dr. Drogin and Dr. Noonan. We also note that, during other significant proceedings, i.e. entry of his guilty plea, Park had the assistance of an interpreter.

Following this hearing, the trial court denied Park's motions to suppress. With the stipulation that he could appeal the court's denial of those motions, Park then agreed to plead guilty to murder in exchange for a recommended sentence of twenty-years' imprisonment. The trial court accepted Park's plea and imposed a sentence consistent with the agreement. Park then appealed the court's denial of his motions to suppress to the Supreme Court of Kentucky, which affirmed the trial court.

Pursuant to RCr 11.42 and CR 60.02, Park then filed a *pro se* motion to set aside his guilty plea and conviction. As noted above, Park argued in that motion that he had received ineffective assistance of trial counsel, because counsel had not advised him that he could assert the defense of EED. Furthermore, Park argued that, had he known of the availability of that defense, he would not have pled guilty, but would have insisted on going to trial. We note that the court ultimately appointed counsel to represent Park during this appeal.

In support of his motion, Park cited to the September 23, 2005, report of Young B. Lee, Ph.D. It appears that Park's counsel obtained this report because of Dr. Drogin's testimony that Park needed to be evaluated by someone with knowledge of Korean and the Korean culture.

In his report, Dr. Lee indicated that Park had a significant amount of debt related, in part, to Seo's gambling. These financial difficulties, along with Seo's four extra-marital affairs, and the recent arrival of her eleven-year-old daughter from Korea, pushed Park to file for divorce in August 2003. According to Dr. Lee, the couples' problems came to a head early on the morning of November 4, 2003. When Seo got home from work that morning, she and Park argued and, according to Dr. Lee, Park got a gun from his office but "had no intention of using it or killing anyone." Again, according to Dr. Lee, Park remembered Seo saying that if he did not kill her, she would kill him; then, "[t]he gun went off. Mr. Park was not aware of where he aimed until he looked and saw his wife dead of a gunshot." [2] Park then called the police and confessed to killing Seo.

Dr. Lee stated that Park's test results indicate that Park is a "sufferer" not an "aggressor," which is consistent with Korean culture's tendency to "[dishonor] any expression of anger." According to Dr. Lee, Park experienced "high level anxiety, depression and serious emotional tribulation and disturbances," which led to "a state of extreme emotional disturbance at the time of the shooting." Dr. Lee stated that Park denied being angry with Seo, instead stating that he was disgusted and disappointed; statements Dr. Lee indicated were consistent with Korean culture. However, we note this is inconsistent with Park's statements to police immediately after the shooting that he was "pissed off," "over the limit," and had "lost patience;" statements that indicate Park was angry, not just disgusted and disappointed.

We also note that Dr. Lee's report, which was generated approximately three

---

2. We note that this version of events is somewhat inconsistent with the statement Park made to police as outlined earlier in this Opinion.

months before Park entered his guilty plea, was mailed to Park's counsel. However, it is not clear whether counsel shared or discussed this report with Park.

After reviewing Park's motion and the Commonwealth's response, the court found as follows:

[Counsel's] decision not to raise the issue of an EED defense was a reasonable trial strategy under the circumstances of this case. An EED defense would have been inconsistent with the statements Park made during the course of his case. The record does not appear to contain evidence sufficient to satisfy the definition of extreme emotional disturbance as set forth by the Kentucky Supreme Court. Thus, [counsel] was not deficient in failing to advise Park that the EED defense was available. The Court finds that [counsel] acted reasonably and effectively in his representation of Park. Consequently, Park is not entitled to relief for this allegation of ineffective assistance of counsel.

Park also argues that had he been aware of the possibility of an EED defense, it was reasonably possible that he would have rejected the Commonwealth's plea and instead proceeded to trial. The record indicates that Park entered into a favorable plea agreement, considering he faced a possible jury sentence of twenty to fifty years or life. An attorney is entitled to advise his client to plead guilty if such advice is given after "an adequate investigation, in good faith, and in the exercise of reasonable judgment." *Commonwealth v. Campbell,* 415 S.W.2d 614 at 616 (Ky.1967). The record indicates that [counsel] advised Park in the exercise of reasonable judgment. Even if Park had raised the defense of EED at trial, there is no certainty that it would have been accepted

by the jury. Accordingly, Park is not entitled to RCr 11.42 relief on this basis. Park has also argued that an evidentiary hearing is required on his 11.42 [m]otion. The Court holds that the issue of [counsel's] performance as counsel can be resolved on the face of the record. Accordingly, Park is not entitled to an evidentiary hearing.

It is from this order that Park now appeals.

## STANDARD OF REVIEW

■ The test for determining ineffective assistance of counsel on a guilty plea is whether

counsel made errors so serious that counsel's performance fell outside the wide range of professionally competent assistance; and ... that the deficient performance so seriously affected the outcome of the plea process that, but for the errors of counsel, there is a reasonable probability that the defendant would not have pleaded guilty, but would have insisted on going to trial.

*Sparks v. Commonwealth,* 721 S.W.2d 726, 727–28 (Ky.App.1986) (*citing Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985)). The trial court is only required to hold an evidentiary hearing on an RCr 11.42 motion if the motion raises an issue that cannot be determined on the face of the record. RCr 11.42(5); *Stanford v. Commonwealth,* 854 S.W.2d 742, 743–44 (Ky.1993). With these standards in mind, we address whether the trial court erred by not holding an evidentiary hearing before denying Park's RCr 11.42 and CR 60.02 motions.

## ANALYSIS

The court's denial of Park's motion appears to be based on two findings: (1) Park could not have proven that he acted under EED; and (2) counsel's advice to

accept the plea agreement was appropriate because, even if Park could make a defense of EED, it was uncertain if the jury would accept it. We address each in turn.

### 1. EED

To establish EED, a defendant must show a temporary state of mind "so enraged, inflamed, or disturbed as to overcome one's judgment, and to cause one to act uncontrollably from the impelling force of the extreme emotional disturbance rather than from evil or malicious purposes." *McClellan v. Commonwealth*, 715 S.W.2d 464, 468–69 (Ky.1986). "[T]he event which triggers the explosion of violence on the part of the criminal defendant must be sudden and uninterrupted." *Foster v. Commonwealth*, 827 S.W.2d 670, 678 (Ky. 1991).

> [T]he triggering event for extreme emotional disturbance may 'fester in the mind' before surfacing to exact its damage .... [and] such a delayed event may be the 'impact of a series of related events' with no specific time frame between the triggering event and the actual homicide. However, ... there exists a "subsidiary inquiry" as to whether there intervened between the provocation and the homicide a cooling-off period sufficient enough to preclude a conclusion that the provocation was adequate.

*Benjamin v. Commonwealth*, 266 S.W.3d 775, 783 (Ky.2008) (citations omitted).

The trial court held that Park could not have asserted EED as a defense because doing so would have been inconsistent with statements he made "that he did not feel anger toward his wife, only disappointment and disgust." Setting aside Park's cultural argument, we agree with the trial court that the statements attributed to Park by Dr. Lee would be inconsistent with the defense of EED.

However, the statements Park made to police-that he was "pissed off," was "over the limit," and had "lost patience"—would not be inconsistent with that defense. Furthermore, the court cannot exclude Park's cultural perspective because EED should not be viewed objectively, but subjectively from Park's perspective. *Id. See also Fields v. Commonwealth*, 44 S.W.3d 355, 358 (Ky.2001) (noting that "the description of EED in KRS 507.020(1)(a) recites a subjective test in that the reasonableness of the explanation or excuse is determined from the viewpoint of 'a person in the defendant's situation under the circumstances *as the defendant believed them to be* ') (emphasis in original). Thus, there was evidence in the record sufficient to support the defense of EED.

However, our inquiry does not end there. As noted by the Supreme Court of Kentucky in *Commonwealth v. Elza*, 284 S.W.3d 118 (Ky.2009), "[W]here the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." *Id.* at 122 (*quoting Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)).

As in *Elza*, the record offers little indication that Park's defense would have succeeded. There was overwhelming evidence of guilt, including his statement and that statement of Seo's daughter. Furthermore, there is little reason to believe that a jury would have sympathized with Park, given the following facts: he shot Seo in her daughter's presence; he calmly reported the crime; he calmly gave his statement to police; and he gave differing versions of events to the police and the expert witnesses. Thus, we hold that

there is no likelihood the defense of EED would have succeeded at trial.

2. Effectiveness of Counsel's Advice

■ As noted by the parties, if Park had been convicted of murder, twenty-years' imprisonment is the minimum to which he could have been sentenced. If Park successfully convinced a jury that he acted under EED, twenty-years' imprisonment is the maximum sentence he would have faced. Based on the sentences Park faced, we agree with the trial court that counsel's advice to accept the plea agreement was reasonable.

As the Supreme Court noted in *Elza,* there is "no ineffective assistance of counsel where defendant was advised to accept a reasonable plea agreement." *Id.* Park, if convicted, faced life imprisonment. The plea agreement recommended by counsel, and voluntarily accepted by Park, resulted in a significantly lower term of imprisonment. In light of the improbability of Park's EED defense, the advice to accept the plea "represent[ed] a meaningful choice between the probable outcome at trial and the more certain outcome offered by the plea agreement." *Id.* (*Quoting Vaughn v. Commonwealth,* 258 S.W.3d 435, 439 (Ky.App.2008)). Therefore, counsel's advice to plead guilty was not ineffective assistance of counsel.

■ Finally, we conclude that, because the record refutes the allegations raised in Park's motion, the trial court did not err when it denied his motion for an evidentiary hearing. RCr 11.42(5); *Stanford v. Commonwealth,* 854 S.W.2d 742, 743–44 (Ky.1993).

## CONCLUSION

For the foregoing reasons, we affirm the trial court.

ALL CONCUR.