RENDERED:  MAY 14, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-0477-MR

ROBERT SCHIERER                                                         APPELLANT

v.
APPEAL FROM KENTON CIRCUIT COURT
HONORABLE PATRICIA M. SUMME, JUDGE
ACTION NO. 14-CR-00042

COMMONWEALTH OF KENTUCKY                                    APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; MAZE AND K. THOMPSON, JUDGES.

MAZE, JUDGE:  This appeal centers upon alleged ineffective assistance of

counsel in the entry of a guilty plea to wanton murder stemming from the death of

an eight-week-old infant while in appellant Robert Schierer's care.  Finding no

error in the thorough and well-reasoned decision of the Kenton Circuit Court, we affirm its denial of RCr[1] 11.42 relief.

In January 2014, a Kenton County grand jury indicted appellant for the offense of murder under KRS[2] 507.020 for wantonly causing the death of an infant child under his exclusive custody and control. He subsequently appeared with his trial counsel, Honorable Harry Hellings and Dean Pisacano, entered a plea of guilty to the charge of murder and, on May 12, 2015, was sentenced to a term of thirty years' imprisonment.

Pertinent to the issues before us, on March 21, 2018, appellant filed a *pro se* motion to vacate his sentence pursuant to RCr 11.42, raising several complaints concerning the effectiveness of the assistance rendered by his trial counsel and requesting both an evidentiary hearing and appointment of counsel to represent him in prosecuting his motion. After the trial court appointed counsel to represent appellant, the Commonwealth filed a response asserting that because the record conclusively refuted each of appellant's claims, an evidentiary hearing was not warranted. In January 2019, the trial court conducted a hearing to determine whether an evidentiary hearing was necessary to rule on the RCr 11.42 motion. The focus of that hearing was appointed counsel's concern about the submission of

---

[1] Kentucky Rule of Criminal Procedure.

[2] Kentucky Revised Statute.

the affidavit of trial counsel Pisacano regarding at least one of the claims raised in the RCr 11.42 motion. The trial court ultimately denied appellant's motion for post-conviction relief without conducting an evidentiary hearing.

In its February 22, 2019 order, the trial court concluded that the record, taken as a whole, conclusively refuted appellant's claims that trial counsel was ineffective in failing to investigate the possibility that a third party caused the death of the child; that trial counsel failed to comply with a court order to provide copies of all discovery material; that trial counsel misadvised him as to parole eligibility; that trial counsel was ineffective in failing to move to suppress autopsy photos of the infant victim; and that trial counsel was ineffective in advising him to enter a guilty plea while maintaining his innocence concerning the crime charged. Although the trial court's determination with respect to misadvice concerning parole eligibility is the only of these rulings directly challenged in this appeal, appellant also argues that the trial court erred in directing trial counsel to submit an affidavit and in utilizing that affidavit to deny relief without a hearing, as well as in ruling that there is no basis for permitting discovery in post-conviction proceedings.

Where the trial court has denied an RCr 11.42 motion without the benefit of an evidentiary hearing, the task before an appellate court is to determine "'whether the [RCr 11.42] motion on its face states grounds that are not

conclusively refuted by the record and which, if true, would invalidate the conviction. *Lewis v. Commonwealth*, Ky., 411 S.W.2d 321, 322 (1967).'" *Baze v. Commonwealth*, 23 S.W.3d 619, 622 (Ky. 2000), *overruled on other grounds by Leonard v. Commonwealth*, 279 S.W.3d 151 (Ky. 2009). Pertinent to the instant appeal, in *Commonwealth v. Elza* our Supreme Court clarified a movant's burden in establishing ineffective assistance of counsel in the entry of a guilty plea:

> In order to prove ineffective assistance of counsel where a guilty plea has been entered, the movant must establish:
>
> > (1) that counsel made errors so serious that counsel's performance fell outside the wide range of professionally competent assistance; and (2) that the deficient performance so seriously affected the outcome of the plea process that, but for the errors of counsel, there is a reasonable probability that the defendant would not have pleaded guilty, but would have insisted on going to trial.
>
> *Bronk v. Commonwealth*, 58 S.W.3d 482, 486-87 (Ky. 2001) (considering claim of ineffective assistance of counsel brought pursuant to RCr 8.10 motion to withdraw a guilty plea). "[T]he trial court must evaluate whether errors by trial counsel significantly influenced the defendant's decision to plead guilty in a manner which gives the trial court reason to doubt the voluntariness and validity of the plea." *Id*. at 487.

284 S.W.3d 118, 120-21 (Ky. 2009). Application of these principles to the issues advanced in this appeal discloses no error in the thorough and well-reasoned decision of the trial court.

*I. Use of Counsel Pisacano's Affidavit to Deny Relief Without a Hearing*

Citing *Knuckles v. Commonwealth*, 421 S.W.3d 399, 401 (Ky. App. 2014), appellant initially argues that "the Commonwealth's use of affidavits, and the circuit court's reliance thereupon, was improper in the absence of an evidentiary hearing." *Id.* The affidavit[3] in question was the product of a status conference conducted on appellant's motion to compel the production of discovery to assist in the preparation of his RCr 11.42 motion. Appellant insists that the trial court improperly relied upon the affidavit to dispose of his argument that trial counsel failed to properly investigate appellant's claim that another person had admitted causing the death of the child. In its order denying the RCr 11.42 relief, the trial court stated:

> The information came from the mother of the victim who was then the defendant's girlfriend and the record includes the affidavit of defense counsel Dean Pisacano stating that he knew about the report that a third party had admitted to the mother of the victim that he was responsible for the child's death; that he (Pisacano) knew that the third party had been in jail on an unrelated charge and so he (Pisacano) had ordered copies of all phone calls between that third party and the mother of the child and that there "were no references or inferences that suggested that this third party was responsible for the injury to the child." This evidence refutes defendant's

---

[3] The Court notes that although the affidavit is discussed by both parties in their briefs and the trial court alludes to the affidavit in its order, a diligent search disclosed no filing of the affidavit in the record. Neither has the affidavit been appended to either brief. However, because the contents of the affidavit are not dispositive of the issue before us, and neither party disputes its existence, we will address the trial court's use of the affidavit in ruling on the RCr 11.42 motion.

-5-

assertion that his counsel failed to conduct an adequate pre-trial investigation into the alleged admission that another person had been responsible for the death of the child.

Were that the end of the trial court's analysis, there might be some merit to appellant's contention that he was denied the due process of law in the use of the affidavit to deny his claim without conducting an evidentiary hearing. However, the trial court went on to discuss in detail factors which, apart from the information contained in the affidavit, prove dispositive of the ineffective assistance claim.

Contrary to his current allegations with respect to the investigation into the third party's admission of guilt to the crime, the trial court specifically found that at the time it accepted his plea, appellant answered the following questions in the affirmative:

> You reviewed the indictment and told your attorneys all the facts known to you about these charges? And they are fully factually informed by you about your case, including all of your witnesses?
>
> They investigated and are fully informed about your case? You've discussed all of your defenses with them. . . .?
>
> You discussed potential trial strategies with them, which may have included witness availability, witness believability, and why counsel may or may not call those witnesses at trial?
>
> You waive the right to confront and cross-examine all the persons called to testify against you to prove your guilt?

You waive the right to produce evidence including persons to testify about your innocence or in your defense?

You were alone with the child the entire time, correct?

In addition to citing trial counsels' affirmative responses to its questions regarding whether it did a full investigation of potential witnesses and discussed trial strategy with appellant, the trial court relied upon trial counsel Heller's statement during the colloquy that it was indisputable that the child had died from trauma; that appellant was the child's sole caretaker at the time of injury; and that the medical evidence showed that the trauma leading to the child's death had to have occurred during the timeframe that the child was in appellant's sole care. Most importantly, the trial court relied upon appellant's own admission that although he could not believe his actions were traumatic enough to have caused the child's death, because of the timeframe he concluded that his actions did in fact cause the trauma to the child. The trial court then concluded that, taken as a whole, the record refutes appellant's claim that counsel was ineffective in failing to conduct further investigation into the possibility that a third party caused the death of the child.

It is interesting to note that appellant does not challenge the trial court's decision regarding counsels' alleged ineffectiveness in failing to investigate the third party, focusing instead on the procedural issue of the use of an affidavit in

the denial of that claim. We question the relevance of questioning the use of an affidavit to dispose of an issue appellant has now abandoned. Nevertheless, viewing the trial court's findings and conclusions in light of the *Elza* standard, we are convinced that appellant failed to demonstrate that his counsels' performance fell outside the wide range of professionally competent assistance or that any deficiency in counsels' performance so seriously affected the outcome of the plea process that, but for the errors of counsel, there is a reasonable probability that the defendant would have refused to plead guilty and would have insisted on his right to trial.

## II. *The Right to Discovery in RCr 11.42 Proceedings*

Appellant next argues that the trial court erred in concluding that there was no legal basis for discovery in RCr 11.42 proceedings. Citing *Hiatt v. Clark*, 194 S.W.3d 324 (2006), for the proposition that a request for trial counsels' files does not constitute discovery, appellant insists that the trial court erred in its ruling that counsel had not complied with a court order to provide him with copies of all discovery material. We perceive no error.

In his motion to compel discovery and related correspondence to the trial court, appellant sought "a complete copy of Discovery, plea agreement, final judgment, and DVD's of all the hearings related to [his] case." It thus appears that, unlike the situation in *Hiatt*, appellant was not requesting trial counsels' "entire

file" but rather sought specifically delineated discovery material. Contrary to appellant's characterization of the holding in *Hiatt*, that case merely stands for the proposition that under proper circumstances, a client may obtain his entire file from former counsel, including work product:

> The facts of this case provide a specific scenario in which work product, properly characterized as such, may be requested and obtained by a former criminal client where that criminal defendant now seeks post-conviction relief alleging ineffective assistance of counsel and therefore needs his file.

*Id*. at 330. Thus, the trial court's statement that discovery is not available in context of RCr 11.42 proceedings in no way runs afoul of the holding in *Hiatt*:

> **Although the Court of Appeals is correct that discovery is not authorized under Kentucky law in an RCr 11.42 action (or other post-conviction proceeding for that matter)**, we note that Appellant is not seeking discovery. Rather, Appellant is seeking to obtain that which is his in the first place—his file.

*Id*. at 327 (emphasis added).

The bottom line is that the record in this case clearly shows that appellant was provided the information he sought. At a status conference conducted on this subject, former counsel Pisacano advised the court that the items appellant requested had been provided, with the exception of the tapes of jail telephone conversations between the alleged third party and the victim's mother. The record contains a subsequent order stating that the requested "DVD tapes are

enclosed and being sent to the Defendant from his attorney, Hon. Dean Pisacano."

Furthermore, the trial court confirmed at a later status hearing in the presence of appellant and his newly appointed counsel that the discovery in the case had been tendered to the court file by Pisacano and that the trial court had forwarded copies of everything to appellant. At that point, neither appellant nor his appointed counsel contended that those items had not been provided.

Neither does appellant specifically argue in this appeal that he did not receive the requested items, rather taking issue with the trial court's statement that discovery is not available in RCr 11.42 proceedings and requesting for the first time on appeal that Pisacano turn over his entire file. Because the trial court did not deprive appellant of the discovery items he sought, he cannot now complain that it improperly denied him a copy of counsels' entire file which he did not request.

### III. *Misadvice as to Maximum Penalty and Parole Eligibility*

Appellant's final allegation of error centers upon his contention that trial counsels' failure to properly advise him of the maximum possible penalty and parole eligibility precluded him from making an informed decision as to the plea offer extended by the Commonwealth. In support of this contention, appellant claims that trial counsel told him that if he declined the Commonwealth's plea offer, he would receive a life sentence without the possibility of parole. He also

maintains that counsel gave him inaccurate information concerning parole eligibility under the Commonwealth's offer. As noted in the trial court's order, appellant maintained that counsel had incorrectly informed him that accepting a sentence of thirty years at 85% parole eligibility is the same as accepting a twenty-year sentence at 85% parole eligibility. Citing *Hughes v. Commonwealth*, 87 S.W.3d 850 (Ky. 2002), the trial court correctly observed that violent offenders sentenced to a term of years are eligible for parole after serving 85% of the sentence imposed or twenty years, whichever is less. Thus, the trial court found that there is a discrepancy of three years concerning parole eligibility for a twenty-year sentence as opposed to a thirty-year sentence. Nevertheless, the trial court concluded that appellant failed to "convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372, 130 S. Ct. 1473, 1485, 176 L. Ed. 2d 284 (2010).

In reaching this conclusion, the trial court outlined the following facts: 1) appellant's acknowledgement in the colloquy that he understood that the penalty for the crime charged is twenty years' to fifty years' or life imprisonment; 2) his acknowledgement that trial counsel had discussed parole eligibility and that given the nature of the crime he would have to serve 85% of the sentence imposed; 3) his statement in the pre-sentence interview that he was pleading guilty to avoid the possibility of life imprisonment; and 4) the fact that at sentencing the

-11-

Commonwealth emphasized the difference in parole eligibility for a twenty-year sentence as opposed to a thirty-year sentence.

In addition, our review of the colloquy surrounding the guilty plea discloses that the trial court made abundantly clear to appellant that the plea offer included a recommendation of a thirty-year sentence. It also made clear that because of the nature of the crime charged, appellant would not be eligible for parole until he had served 85% of the sentence. The trial court emphasized to appellant that although it was inclined to accept the Commonwealth's sentencing recommendation, he could argue for a lesser sentence at the sentencing hearing. At that hearing, appellant's counsel did argue for a twenty-year sentence, stating that under a twenty-year sentence he would be eligible for parole in 17 years. Thus, we find ourselves in complete agreement with the trial court's conclusion that, taken as a whole, the record clearly refutes the assertion that trial counsel was ineffective in misinforming appellant of his parole eligibility. Further, given the evidence as to the extent of the injuries inflicted upon the infant, appellant's acknowledgement that his actions must have given rise to the trauma causing the death of the child, and the fact that he was the sole caregiver during the time the trauma was inflicted, we cannot conclude that the rejection of the Commonwealth's offer of thirty-years would have been rationale under the circumstances.

*IV. Conclusion*

In sum, nothing in this record supports appellant's claims of ineffective assistance of trial counsel or his assertions of due process deprivations in the disposition of his RCr 11.42 motion. Rather, we are fully convinced that this appeal falls squarely within the rationale set out in *Elza*:

> Furthermore, as detailed above, the record clearly establishes that Elza's guilty plea was voluntary, and that the plea agreement was reasonable in light of the circumstances. "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Edmonds* [*v. Commonwealth*, 189 S.W.3d 558, 569 (Ky. 2006)] quoting *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977). The trial court properly rejected Elza's motion without conducting an evidentiary hearing.

284 S.W.3d at 122.

Accordingly, the order of the Kenton Circuit Court denying appellant's motion for RCr 11.42 relief without a hearing is hereby affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Kieran J. Comer
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Thomas A. Van de Rostyne
Assistant Attorney General
Frankfort, Kentucky