RENDERED: JULY 22, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1116-MR

ALASTAIR MARTEL COUCH                                      APPELLANT

APPEAL FROM FRANKLIN CIRCUIT COURT
v.          HONORABLE THOMAS D. WINGATE, JUDGE
ACTION NO. 10-CR-00212

COMMONWEALTH OF KENTUCKY                                   APPELLEE

OPINION
AFFIRMING

\*\* \*\* \*\* \*\* \*\*

BEFORE: ACREE, COMBS, AND MAZE, JUDGES.

MAZE, JUDGE: Alastair Martel Couch (Couch) appeals the denial of his motion

for postconviction relief without an evidentiary hearing in accordance with RCr[1]

11.42(5). Finding no error in the decision of the Franklin Circuit Court, we affirm.

---

[1] Kentucky Rules of Criminal Procedure.

Tomma Graves, a long-time friend of Couch, was reported missing on July 31, 2010. Two days later, her body was recovered. She had been shot in the skull, arm, and hand.

Through witness testimony, the Commonwealth showed that she had been seen with Couch on the morning of her death. Later that day, a witness saw a black male running near the parking lot where Graves' body was eventually recovered. Another testified to seeing a black male walking in that area while talking on a cell phone, giving directions. That witness indicated that the man appeared to be holding a blood-stained shirt. He observed the black male getting into a red truck with a farm plate.

Dusty Whitis, a key prosecution witness, testified that he had scheduled a drug deal with Couch on the morning of the murder, but that Couch changed the location several times, afraid that "someone had seen him." Whitis saw Couch remove spent shell-casings from a handgun and dispose of them. The pair then traveled to the home of Whitis' girlfriend, where Couch burned a blood-stained shirt and a cell phone. Couch then left the home with Bryce Hodges and Michael Williams. The three men drove out into the country where Couch was observed disposing of something over a cliff. After receiving a tip, police officers recovered a revolver from that area. It was later determined to be the murder weapon.

In his trial testimony, Couch told the jury that on the morning of the murder, a masked man entered Graves' truck and forced him into the back seat, instructing her to drive. During a struggle between Couch and the attacker, the gun went off and Graves screamed. When the vehicle halted, the assailant ran off and Couch discovered that Graves was dead.

As an admitted drug dealer, he was too frightened to call the police. He parked the car in downtown Frankfort, collected Graves' cell phone, his weapon and the one used by the attacker. The latter he disposed of in the manner testified to by Whitis.

Following a jury trial, Couch was convicted of murder, tampering with physical evidence, and being a persistent felony offender, second degree. In accordance with the jury's recommendation, he was sentenced to fifty (50) years for murder, five (5) years for tampering with physical evidence, enhanced to ten (10) years by the persistent felony offender conviction, for a total sentence of sixty (60) years. The Supreme Court affirmed his conviction in an unpublished opinion.[2] His arguments that his trial counsel allowed references to his alleged involvement in the drug trade and that trial counsel failed to object to the Commonwealth's "send a message" statement during *voir dire* were rejected on direct appeal.

---

[2] *Couch v. Commonwealth*, No. 2011-SC-000603-MR, 2013 WL 658151 (Ky. Feb. 21, 2013).

On March 11, 2016, Couch sought postconviction relief by filing a motion pursuant to RCr 11.42. He alleged that his trial counsel, Mark Bubenzer, was ineffective by 1) allowing repeated references to his involvement in the drug trade; 2) failing to object to the Commonwealth's "send a message" argument during *voir dire*; 3) failing to properly advise and prepare him for his testimony and cross-examination in the guilt phase of his trial; and 4) for failing to investigate and present mitigation evidence in the penalty phase.

On August 13, 2020, the trial court denied his motion without conducting an evidentiary hearing, noting that a hearing is only required where there is a question of fact that cannot be resolved by an examination of the record. *Fraser v. Commonwealth*, 59 S.W.3d 448, 452 (Ky. 2001). The trial court then applied the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) (adopted in *Gall v. Commonwealth*, 702 S.W.2d 37 (Ky. 1985)), denying Couch's postconviction motion on the merits. However, in so doing, the trial court considered the affidavit of Couch's trial counsel as tendered by the Commonwealth in support of its response.

In *Knuckles v. Commonwealth*, 421 S.W.3d 399 (Ky. App. 2014), the movant sought postconviction relief, an evidentiary hearing and appointment of counsel. Although the Commonwealth argued that no hearing was necessary, it did tender the affidavits of Knuckles' trial counsel and his investigator in support

of its response.  The trial court then relied upon those affidavits in denying

Knuckles' motions.

On appeal, this Court concluded that:

The Commonwealth's supplementation of the record by
providing the circuit court affidavits was essentially an
admission that the record was insufficient for resolution
of Knuckles' motion.  If the Commonwealth had truly
believed the record was sufficient, then its objection to
the RCr 11.42 motion . . . should have referred to that
record alone, and should not have required supplemental
affidavits.  If, on the other hand, the Commonwealth
believed the record was insufficient and necessitated
sworn statements by trial counsel and the investigator,
then it should have raised no objection to Knuckles'
request for a hearing and conceded that one was
necessary.

*Id*. at 401.

In *Knuckles*, as here, the case of *Commonwealth v. Elza*, 284 S.W.3d

118 (Ky. 2009), was cited in support of the use of affidavits in the resolution of

RCr 11.42 cases.  The *Knuckles* Court dismissed this argument as dispositive on

the issue, stating that, "Nowhere, however, did the Supreme Court state that the use

of affidavits could take the place of a hearing."  *Knuckles*, 421 S.W.3d at 402.

In *Commonwealth v. Searight*, 423 S.W.3d 226, 231 (Ky. 2014), the

Kentucky Supreme Court noted that, where, as here, no evidentiary hearing is held,

the appellate court's review is "limited to determining 'whether the motion on its

face states grounds that are not conclusively refuted by the record and which, if

-5-

true, would invalidate the conviction.'" Therefore, this Court will proceed with its analysis of the arguments raised in Couch's motion.

The trial court found that trial counsel's references to his drug dealing history during *voir dire* were not evidence of incompetence but were in fact a useful tool in enabling him to determine which potential jurors should be stricken from the panel. Further, there was substantial, admissible evidence of record regarding Couch's drug dealing activities including those of which the defense was given notice pursuant to KRE[3] 404(c), the testimony of Dusty Whitis, and Couch's own testimony. Clearly, the record as it pertains to evidence of Couch's drug dealing contains no facts which would warrant invalidating his conviction.

Next, Couch once again cites trial counsel's failure to object to the Commonwealth's improper "send a message" argument during *voir dire* as error. However, this argument has already been considered and rejected by the Kentucky Supreme Court. The Court held that:

> the improper comment was made in an effort to encourage potential jurors to set aside their reluctance to participate in the jury process by underscoring the important role of a juror. The Commonwealth did not directly reference Couch or the charges against him in conjunction with the statement. Considered within context, we do not believe this brief and isolated comment undermined the overall fairness of the proceedings. Reversal is not required.

---

[3] Kentucky Rules of Evidence.

*Couch*, 2013 WL 658151 at 3.

Next, Couch's argument that trial counsel erred by failing to prepare and advise him in advance of his trial testimony is without merit. He stated at trial and on the record that his decision to testify was a mutual one between him and his trial counsel. Trial counsel's conduct in the preparation and advice given to Couch regarding his testimony did not demonstrate incompetence and there has been no showing that Couch was prejudiced by this conduct or that different conduct would have resulted in a different outcome.

Finally, Couch has alleged error as to his trial counsel's performance during the penalty phase of the trial. As noted by the trial court, Couch's criticism of counsel's conduct in allowing the persistent felony offender charge to be proven by affidavit rather than certified court records was properly preserved and should have been presented on direct appeal. Further, the record reflects that the Commonwealth's misstatement concerning the issue of parole eligibility for the murder conviction was cured by allowing the jury to take a copy of the parole eligibility guidelines into their deliberations.

Finally, this Court has reviewed the affidavits of Couch's proposed mitigation witnesses. His parents and sister indicated that they would have come to Frankfort to testify during trial. They further stated that no one had ever contacted them about coming to Frankfort to testify in either phase of the trial, that

-7-

Couch was a good son/brother, that he was a good father, that he had no juvenile history, and, in fact, performed well in school and received a full scholarship. Further, they indicated that they could have provided the names of other mitigation witnesses. Here, as in *Searight*, we find that Couch was "not prejudiced by the alleged error in failing to present mitigation evidence, because even if true, the proffered testimony would not have undermined confidence in his sentence." 423 S.W.3d at 234. Indeed, as argued by the Commonwealth, the testimony may well have been prejudicial to Couch in and of itself since the jury could have found him "more culpable" since he came from such a "loving family[.]" *Johnson v. Bell*, 344 F.3d 567, 574 (6th Cir. 2003).

This Court further finds that counsel's decisions with regard to the use of mitigation witnesses during the penalty phase were ones of "trial strategy." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. As stated in *Hodge v. Commonwealth*, 68 S.W.3d 338, 344 (Ky. 2001) (citing *Porter v. Singletary*, 14 F.3d 554,557 (11th Cir. 1994), *cert. denied*, 513 U.S. 1009, 115 S. Ct. 532, 130 L. Ed. 2d 435 (1994)), such "tactical choice[s]" by counsel are granted a "strong presumption of correctness," and, if the court makes such a determination, then the "inquiry is generally at an end." In *Searight*, *supra*, this Court had held that the matter of trial strategy should have been remanded to the trial court for an evidentiary hearing. However, the Kentucky Supreme Court held that, "[if] the

trial court properly denied Searight's RCr 11.42 motion on prejudice grounds without a hearing, [then] the Court of Appeals erred in ordering a nugatory hearing to determine trial strategy." 423 S.W.3d at 231.

This Court must conclude, as did the trial court, that Couch was unable to demonstrate either the incompetence of counsel or the prejudice required under *Strickland*, *supra*. There has simply been no showing that, if trial counsel had performed in accordance with the proposals made by Couch in hindsight, the result herein would have been any different. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

Accordingly, the opinion and order entered by the Franklin Circuit Court on August 13, 2020, is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Samuel N. Potter
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Jeffrey A. Cross
Deputy Solicitor General
Frankfort, Kentucky