RENDERED:  OCTOBER 7, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1798-MR

DANNY R. SIZEMORE                                        APPELLANT

v.
APPEAL FROM LAUREL CIRCUIT COURT
HONORABLE MICHAEL O. CAPERTON, JUDGE
ACTION NO. 12-CR-00126

COMMONWEALTH OF KENTUCKY                               APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; MAZE AND K. THOMPSON, JUDGES.

THOMPSON, K., JUDGE:  Danny R. Sizemore appeals from the Laurel Circuit

Court's October 21, 2019 order denying his Kentucky Rules of Criminal Procedure

(RCr) 11.42 motion to vacate the October 23, 2013 judgment based upon

ineffective assistance of counsel after an evidentiary hearing.  Upon review, we

affirm.

On May 18, 2012, a Laurel Circuit grand jury indicted Sizemore for offenses relating to his alleged sexual contact with C.T., a person less than fourteen years of age, between January 2010 and January 2012. The charged offenses included: (1) rape in the first degree; (2) sexual abuse in the first degree; (3) rape in the second degree; and (4) sodomy in the second degree. Sizemore's charges were ultimately scheduled for a jury trial on August 7, 2013.

However, on August 1, 2013, during his final pretrial hearing, Sizemore moved to enter a guilty plea. His plea agreement specified that Sizemore would plead guilty to one count of rape in the second degree, for which he would serve seven years' imprisonment; one count of sodomy in the second degree, for which he would serve a consecutive sentence of five years' imprisonment; and in exchange, the Commonwealth would dismiss his remaining charges. Sizemore's plea agreement with the Commonwealth stipulated the facts of the case as follows:

> On or about January 2012, in Laurel County, Kentucky, [Sizemore], acting alone or in concert with others, committed the offenses of Rape in the Second Degree and Sodomy in the Second Degree.

At the pretrial hearing, the circuit court initially assessed the voluntariness of Sizemore's guilty plea through a colloquy consistent with *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). During his colloquy, Sizemore provided affirmative responses when asked, in substance, the following questions:

Has your attorney explained to you the nature of the charges against you, the penalties they carry, and any possible defenses to the charges?

Have you had all the time you need to talk privately with your attorney?

Are you satisfied with the service he provided?

Do you understand that you have the rights to a jury trial, representation, and to confront witnesses of the Commonwealth, and that you give up these rights by entering a guilty plea?

Sizemore also provided negative responses when asked, in substance, the following questions:

Have you ever suffered from any mental illness or defect in the past that affected your ability to think and to reason?

Do you suffer from any such mental illness or defect at this time?

Is there anything that you wanted your attorney to do in your defense that your attorney has not done?

Do you now have any question of the court or your attorney concerning your motion to enter a guilty plea?

Based upon Sizemore's answers, what it observed of his demeanor, and the consistent assurances of Sizemore's counsel, the circuit court determined Sizemore's guilty plea was knowing, intelligent, and voluntary, and the circuit court accepted it. However, final sentencing was postponed until October 18,

2013, pending a presentence investigation (PSI) which, considering the nature of his crimes, entailed a sexual offender evaluation.

On October 18, 2013, Sizemore appeared for final sentencing. By that time, he had been evaluated and a PSI report had been furnished to the circuit court pursuant to Kentucky Revised Statutes (KRS) 532.050. Prior to sentencing, however, Sizemore's counsel and the prosecutor conferred with the trial judge at the bench regarding an issue that had arisen over the course of Sizemore's PSI evaluation. Apparently, the PSI report (which is not of record) reflected that Sizemore had indicated to the evaluating probation officer that he was not guilty of the charges to which he had pled guilty. Sizemore's counsel represented that he had not received the PSI report until 5 p.m. on October 17, 2013, and "I went to the jail this morning to talk to [Sizemore], show him what he did, and he said, 'well, I didn't know I did that.'" Sizemore's counsel explained that his client's denial of guilt to the evaluating probation officer was born of confusion or panic; and, fearing that Sizemore's denial would negatively impact the risk assessment aspect of the PSI, he asked the circuit court to enter an order requiring the Department of Corrections to reevaluate Sizemore to permit Sizemore to admit guilt. Thereafter, the circuit court, prosecution, and Sizemore's counsel debated whether such an order could be binding upon the Department of Corrections, and whether requiring a second PSI would have any practical impact upon Sizemore's prospects of

parole. Nevertheless, the circuit court agreed to enter an order directing the Department of Corrections, Sex Offender Risk Assessment Unit, to reevaluate Sizemore "as soon as possible." It entered a written order to that effect on October 30, 2013.

Proceeding with final sentencing, the circuit court asked Sizemore and his counsel if there was any reason why Sizemore's sentence should not be pronounced, and if Sizemore wished to make any additional statement in his defense or in mitigation. Sizemore, for his part, said nothing. Sizemore's counsel responded that the PSI report should be amended to reflect that Sizemore's education level had progressed to "two years of college" (as opposed to what the report had apparently and erroneously represented was a "10th grade education"); and he requested probation for his client, which was denied. The circuit court, finding no reason why Sizemore's sentence should not be pronounced, then sentenced Sizemore consistently with his plea agreement to a total of twelve years' imprisonment.

On October 11, 2016, Sizemore moved to set aside the circuit court's judgment and sentence of imprisonment pursuant to RCr 11.42, asserting the evidence would have demonstrated he was not guilty, and that his guilty plea had been the product of his counsel's deficient representation.

As somewhat illustrated below, Sizemore's RCr 11.42 arguments have varied over time depending upon the state of the proceedings, and many of his arguments have been effectively waived, abandoned, or improperly raised for the first time in this appeal. For purposes of fleshing out his appellate arguments, it is necessary to discuss the full array of his arguments in depth, along with how they have progressed. Sizemore first elaborated upon his counsel's alleged acts of deficient representation in an extensive memorandum accompanying his RCr 11.42 motion. There, he argued in relevant part:

> Trial counsel failed to interview witnesses of the Commonwealth's, especially the investigating officer, Stacy T. Anderkin. If he had, trial counsel would have learned that Anderkin never recorded the so called interview with the movant. It was clearly hearsay on the investigator's part, for the movant never confessed, never signed a confession, or never signed a waiver of any type, (Miranda[1] Rights or Waiver of Attorney)[.] Anderkin stated that the movant signed a waiver in her statement and said it was attached but when movant received his trial counsel's file and the certified court records, there was no waiver form of any type. Movant has maintained that he has never signed any waiver of any type. This should have been aggressively attacked by trial counsel for if an investigator fails to record an interview, or have a signed statement or confession, it would be very hard to be clear of all the facts and issues that were discussed and said during the interview. Failure to file a Motion to Suppress and attack this improper interview was well below what is required of a competent attorney.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct 436, 86 L.Ed.2d 694 (1966).

-6-

. . .

Trial counsel failed to follow up on the fact that the alleged victim has accused Two (2) other men of the same crime that the movant was accused of.

. . .

[T]rial counsel relied on the family of the movant to gather information and chose to sit by and wait on what the Prosecutor was going to do.  Any time that the movant would request for something to be done, counsel would tell the movant we just need to wait and see what the Commonwealth will do.

. . .

Movant requested and received the trial counsel's file to his case, and there was no notes that an actual investigation was ever done.  There was no record of an investigator being hired to assist the defense with the investigation of the movant's case.  No interviews of the Commonwealth's witnesses or the alleged victim, nor any depositions taken.  No Subpoenas were ever done for Medical Records, or for any other testing, or examinations done.

. . .

The Movant asserts that trial counsel never advised the movant of any potential affirmative defense.  That trial counsel never discussed any trial strategy with the movant.

. . .

Movant asserts that because of the continued oppression of his trial counsel, and the loss of his sister and daughter, and knowing that the trial counsel had done nothing and was not going to do anything to defend him;

movant asserts that he had no choice that to take the plea deal to avoid a lengthy prison sentence because trial counsel was doing nothing but waiting to see what the Commonwealth Attorney was going to do.

. . .

Trial counsel rendered Ineffective Assistance of Counsel when he told a witness, Missy Jones, for the movant, that she needed to keep her mouth shut or she would go to jail as well. Missy Jones came to the trial counsel's office on her own to discuss what she knew. Jones would have given testimony that the allegations against the movant was not true and if given the chance to testify Jones would have further testified that the alleged victim was sexually active and these allegations were made up and had no merit.

. . .

Due to the failure of trial counsel to obtain all of the movant's medical records; within these medical records was medical proof that the movant has Hepatitis C and has had it for years. And if trial counsel would have requested a blood test from the alleged victim; this would have shown that the alleged victim did not have Hepatitis C and would have been used to impeach the alleged victim because, Hepatitis C is a highly transmitted disease that can be contracted from injection of drugs, blood transfer, and or sexual intercourse. The medical records would have further shown that Hepatitis C has no symptoms and is detectable only by a blood test.

. . .

Movant asserts that he was denied Effective Assistance of Counsel when his trial attorney never discussed the effects of him signing a plea deal. He never informed the movant of his rights he would waive when he signed for a plea deal; such as the right to trial by jury, the right to

confront his accusers, the right to have witnesses for his defense, the right to appeal, or the right to remain silent. Counsel was fully aware that the movant's daughter had passed away suddenly in 2012 and his sister had passed away as well in 2013. This was an emotional period of the movant's life and he was not in his clear mind and was not able to clearly assist in his defense and when his Trial counsel failed to defend him against these allegations, prepare or advance a defense, and when his trial counsel consistently pressured the movant into taking a plea deal, he gave up and accepted it reluctantly, but he maintained his innocence then and still does as of today.

. . .

[I]f trial counsel would have investigated the case at hand, he would have discovered that the alleged victim said that the movant had a very hairy chest; if the trial counsel had done any investigation into the facts of this case, he would have learned that the movant has very little hair in the above mentioned area and is unable to grow hair in the above mentioned area.

. . .

[T]he cumulative effect of trial counsel's errors substantially prejudiced the movant.

The circuit court ultimately granted Sizemore's request for an evidentiary hearing on his motion, placing no limit upon the scope of the hearing. It granted Sizemore's request for appointed counsel. It also granted appointed counsel's requests to continue the hearing on Sizemore's motion to August 8, 2019, to provide a full opportunity to review and investigate the substance of the motion.

At the onset of the August 8, 2019 hearing, the Commonwealth informed the circuit court it anticipated Sizemore would be providing testimony, and that Sizemore's former counsel would also provide testimony if necessary. However, Sizemore's counsel explained to the circuit court that "[w]e just would like to take a little bit of testimony from Mr. Sizemore. I think that would conclude it for today, any proof we'd be offering."

Thereafter, in line with his counsel's statement, the only evidence Sizemore adduced at the evidentiary hearing was his own self-serving testimony. Sizemore failed to offer any testimony or argument regarding: (1) his counsel's failure to secure a blood test from his alleged victim for purposes of determining whether she had contracted Hepatitis C; (2) his counsel's directive to Missy Jones to "keep her mouth shut"; or (3) the impeachment evidence that in his view his former counsel should have discovered about C.T. – other than to say that his former counsel told him that "mak[ing] the child look promiscuous" "would make the child look bad and make me look bad." He testified "the first thing" his counsel "should have done was suppress evidence on [Detective (Det.)] Anderkin," but offered no further elaboration. Speaking in generalities, he also testified that his attorney had failed to adequately investigate, research, and prosecute his case.

Apart from that, much of Sizemore's testimony was directed toward issues he had never discussed in his RCr 11.42 motion. His counsel summarized and highlighted those issues in a closing argument following the hearing:

> Your honor, this 11.42 motion was brought by Mr. Sizemore because, um, primarily because he felt like he was not, uh, he was forced into taking this 11.42, I'm sorry, this plea deal. And we say that because, *primarily because of the discussion on the percentages on the parole eligibility*. Mr. Sizemore did say, although there was a little confusion, although he did that the parole eligibility was a factor in him taking it. Had he known he had to serve 85% of twelve years, he wouldn't've taken it, and would've taken his chances in defending himself. However, um, because of the different factors that he was facing while in prison awaiting trial, um, *he testified specifically to not getting the right medication, which to me is the biggest one*. But also that he had to be subjected to being, um, he had to be subjected to knowing that his family was dying and not being able to be there, and that he would have to be labeled as a sex offender, um, if convicted or found guilty. Now, I say that because, as Mr. Sizemore testified, you know, being labeled as a sex offender, uh, especially for a life sentence, but even for twelve years alone, um, even worse in county jail where there are less, less restrictions than, um, you know in a prison, uh, between the inmates and themselves, you know, he is subjected to a lot of anguish. Mr. Sizemore said that, you know, people refer to him as "cho-mo," that *others were making him, uh, potentially making him doing things that he had been told by others while in prison that it gets even worse, um, as a sex offender*. And so, the big thing for Mr. Sizemore was that during his time, sixteen months with, which is a pretty extensive period of time to send, serve in jail waiting for trial, during that time he was subjected to all these things. And *aside from being on depression medication that he was not receiving*, um, you know, I

-11-

would've, I would say that I would've taken a plea deal as well to get that over with. And that's what he's standing here today saying, is that he really just wanted to get this over with, and that *he was told, and was under the impression that he would only have to serve about 32 months, and that while he knew it wasn't guaranteed*, that the fact that he was only about to be 32 months was, alright, okay, you know, can get through that quickly and can be done. It's not necessarily about, um, not serving a life sentence without, with the possibility of parole, but it's about the fact that he felt, in maintaining his innocence throughout with his communications with his attorney, but felt like the process was taking too long and the best way to go about that was to plead guilty.

(Emphasis added.)

In other words, Sizemore had argued in his motion that his decision to plead guilty had been affected by the duration of his pretrial incarceration and the deaths of his sister and daughter; but at the hearing, he also argued, for the first time, that his decision had also been induced by: (1) lack of medication for depression during his incarceration; (2) the threat of abuse from other prisoners due to the nature of his offenses; and (3) incorrect advice from his counsel regarding his parole eligibility.

Following the hearing, the circuit court entered a dispositive order resolving Sizemore's motion. There, it first addressed whether Sizemore had demonstrated that, but for the incorrect advice of his former counsel regarding his parole eligibility, he would not have pled guilty. The circuit court determined Sizemore had failed to do so, specifically noting that Sizemore had conceded

-12-

during the hearing: "I wasn't depending on making parole in the first place. That's just something [my former counsel] said to me and he told my family."

Second, it addressed whether Sizemore had demonstrated his former counsel had provided him ineffective assistance by not moving to suppress whatever statements he had made during his interview with Det. Anderkin. The circuit court determined Sizemore had failed to do so, pointing out that Sizemore never claimed his former counsel had *refused* or *never planned* to file a motion to suppress. Sizemore had merely claimed his former counsel *had not*, prior to his guilty plea, filed a motion to suppress or attack any statements of Det. Anderkin, which was not enough.

Third, it addressed whether Sizemore had presented any other specific instance of action or inaction from his former counsel that was outside the acceptable range of a competent attorney. It found Sizemore had not done so.

Lastly, it addressed whether Sizemore had adduced sufficient evidence demonstrating his guilty plea was rendered involuntary due to pressure from his counsel, mental stress arising from the deaths of his sister and daughter, or his fear of serving a life sentence (as opposed to merely twelve years' imprisonment) labeled as a child molester. In this vein, the circuit court considered Sizemore's hearing testimony favoring that proposition, and it deemed his hearing testimony insufficient when weighed against what Sizemore had represented in

-13-

2013 during his *Boykin* colloquy. Having addressed these four points, and having found them lacking in merit, the circuit court denied Sizemore's motion.

On appeal, Sizemore spends much of his brief stating the law relative to RCr 11.42 motions. However, he does not address the circuit court's determinations that he: (1) failed to demonstrate that, but for the incorrect advice of his former counsel regarding his parole eligibility, he would not have pled guilty; and (2) failed to demonstrate his former counsel provided him ineffective assistance by not moving to suppress whatever statements he had made during his interview with Det. Anderkin. Accordingly, Sizemore has abandoned those issues and they will not be reviewed. "Normally, assignments of error not argued in an appellant's brief are waived." *Commonwealth v. Bivins*, 740 S.W.2d 954, 956 (Ky. 1987). "An appellant's failure to discuss particular errors in his brief is the same as if no brief at all had been filed on those issues." *Milby v. Mears*, 580 S.W.2d 724, 727 (Ky.App. 1979).

Sizemore argues that while he was incarcerated prior to his guilty plea, he was "[n]ot provided medical attention for pain or depression medication he been on for years," and his former counsel was ineffective by failing to "discover[] the inconsistences [sic] within the same interview of [C.T.]" and failing to "motion Court for a blood test[.]" Sizemore adduced no argument or evidence during his hearing relative to his former counsel's failure to try to discover impeachment

-14-

evidence about C.T., instead again referencing strategic reasons his counsel provided as to why it would not be appropriate to pursue a defense that C.T. had other attackers. We note that the rape shield law may have prevented much of the evidence Sizemore was hoping his counsel to be able to put on from being introduced at any trial, the fact that C.T. may have had multiple attackers would not exclude him from being one of them, and that even assuming a blood test would show that Sizemore has Hepatitis C and C.T. does not, this would not exclude him as a perpetrator. The failure to call his trial counsel to testify seriously undermined these claims and Sizemore was not able to show any prejudice from these claimed failures to investigate.

Additionally, absent the introduction of evidence to support allegations made in an RCr 11.42 hearing, these issues are properly deemed to have been waived. *King v. Commonwealth*, 408 S.W.2d 204, 205 (Ky. 1966). Moreover, because the circuit court made no findings relative to any of these issues, and because Sizemore filed no post-judgment motion requesting findings on these issues, they cannot serve as bases for reversing or remanding. *See* RCr 11.42(6).

Sizemore also asserts:

> In Appellant [sic] presentencing report Appellant
> continue [sic] to maintain his innocence even though he
> was entering into a plea agreement with the Court. The
> Court ordered Appellant to be re-evaluated by the

-15-

Department of Corrections to allow Mr. Sizemore to state he had done the crime he now pleads guilty to, as instructed by his counsel. To date, the order has never been followed and appellant has continued to maintain his innocence.

To be clear, nothing of record indicates Sizemore was ever, consistently with the circuit court's October 30, 2013 order, reevaluated by the Department of Corrections for purposes of his PSI. To the extent Sizemore addresses this subject in his brief, he seems not to take issue with that fact at all, and rather appears to view it as evidence that he has consistently maintained his innocence throughout these proceedings. Assuming this detail is relevant, however, Sizemore ignores that he nevertheless pled guilty. Sizemore also ignores that, when given an opportunity during final sentencing (*e.g.*, after his PSI evaluation) to provide any reason why his sentence should not be pronounced, or if he wished to make any additional statement in his defense or in mitigation, he said nothing.

Additionally, Sizemore asserts that "Mr. Sizemore [sic] education assessments on February 17, 2014, Language Skills are that of **Beginning Basic Education**[,]" and "[a]t best, we can only surmise or use guesswork if Mr. Sizemore understood his plea that he was force [sic] to take by Counsel." To start, this argument is undercut by what Sizemore's former counsel represented during final sentencing, *i.e.*, that Sizemore's education progressed to the point of two

years of college. That aside, this argument was never presented below, and this Court "is without authority to review issues not raised in or decided by the trial court." *Regional Jail Auth. v. Tackett*, 770 S.W.2d 225, 228 (Ky. 1989) (citations omitted).

The remainder of Sizemore's appellate arguments consist of general contentions, without citation to the record, that his guilty plea was induced by his former counsel's pressure to accept the Commonwealth's agreement; his former counsel's failure to adequately investigate, research, and prosecute his case; and his specific contention that his guilty plea was likewise induced by the mental anguish he suffered due to the deaths of his sister and daughter, and his prolonged pretrial incarceration.

In cases involving a guilty plea, the United States Supreme Court has stated that the traditional test is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970)). Consequently, a defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59, 106 S.Ct. at 370. *See also Taylor v. Commonwealth*, 724 S.W.2d 223 (Ky.App. 1986). When an evidentiary hearing

is held in an RCr 11.42 proceeding, RCr 11.42(6) requires the circuit court to make findings on the material issues of fact, which we review under a clearly erroneous standard. Kentucky Rules of Civil Procedure (CR) 52.01; *Haight v. Commonwealth*, 41 S.W.3d 436, 442 (Ky. 2001), *overruled on other grounds by Leonard v. Commonwealth*, 279 S.W.3d 151 (Ky. 2009).

Here, the only evidence Sizemore adduced on these subjects during the evidentiary hearing derived from his own general, self-serving testimony. This testimony directly conflicted with, and was undermined by, the testimony he provided during his August 1, 2013 *Boykin* colloquy. A defendant's statements and testimony during a plea colloquy play a role in determining, based upon the record, whether his plea was knowing and voluntary. *See Commonwealth v. Elza*, 284 S.W.3d 118, 122 (Ky. 2009) (utilizing a defendant's "statements and demeanor" at the plea colloquy as evidence against allegations of coercion and deficient performance). Such "[s]olemn declarations in open court carry a strong presumption of verity." *Edmonds v. Commonwealth*, 189 S.W.3d 558, 569 (Ky. 2006) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (Ky. 1977)). Accordingly, the circuit court did not clearly err in assigning more weight to Sizemore's *Boykin* colloquy statements, which contradicted his self-serving and general hearing testimony that his former

counsel's representation was deficient, and that mental anguish induced him to enter his guilty plea.

Accordingly, we affirm the Laurel Circuit Court's denial of Sizemore's RCr 11.42 motion.

ALL CONCUR.

BRIEF FOR APPELLANT:

Danny R. Sizemore, *pro se*
La Grange, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Todd D. Ferguson
Assistant Attorney General
Frankfort, Kentucky