**Bradley Scott RUSSELL, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 1997–CA–001888–MR.

Court of Appeals of Kentucky.

March 12, 1999.

Rehearing Denied April 30, 1999.

Christophe G. Stewart, Louisville, Kentucky, for Appellant.

A.B. Chandler, III, Atty. Gen., Vickie L. Wise, Asst. Atty. Gen., Frankfort, Kentucky, for Appellee.

Before: KNOPF, KNOX, and SCHRODER, Judges.

## OPINION

SCHRODER, Judge.

This is an appeal from an order denying appellant's RCr 11.42 motion alleging a defective indictment and that his counsel was ineffective for advising him to plead guilty to rape and murder when the evidence revealed that appellant had sex with the victim after the victim was already dead. Upon review of appellant's arguments in light of the record herein and the applicable law, we affirm.

On October 13, 1985, Carlotta Rearden was fatally shot in the head in her home in Frankfort. Her body was discovered by her daughter in a back bedroom of the house. She had been undressed from the waist down and sexually assaulted by means of intercourse by her perpetrator. The cause of death was a single gunshot wound to the head which, according to the autopsy conducted by the Associate Chief Medical Examiner for the State of Kentucky, caused virtual instantaneous collapse and death. Three days after the crime, appellant, Bradley Russell, a friend of the victim and her family, confessed to the crime to police after he had been taken into custody for questioning. At that time, appellant was fifteen (15) years and five (5) months of age.

Appellant told police that he had been visiting with Ms. Rearden in her home on the night in question. At some point, he went into her bathroom and loaded the gun which he had earlier in the afternoon stolen from the victim and her husband's furniture store. When he came out, Ms. Rearden was bent down looking at a map in the kitchen. He stated that he came up

behind her and shot her in the head and she immediately laid down. He then carried her into the bedroom where she was found and laid her on the bed. At that time, he took her clothes off from the waist down and partially disrobed her upper body. He then proceeded to have sexual intercourse with her. When asked by police if the victim appeared to be alive at the time of the sexual assault, appellant responded that he did not know. After the sexual assault, appellant covered the victim's body with a rug and fled the scene.

Because appellant was a juvenile at the time of the crime, on January 7, 1986, the Franklin County District Court entered an order transferring the case against appellant to the circuit court for appellant to be tried as an adult. The following were the grounds stated in the juvenile petition: on October 13, 1985 the accused caused the death of Carlotta Rearden ... and after causing said death the accused performed sexual intercourse on the body of Carlotta Rearden.... On February 26, 1986, appellant was indicted by the Franklin County Grand Jury on charges of first-degree rape and capital murder. Count I of the indictment stated:

> Bradley Scott Russell committed the capital offense of murder when he killed Carlotta Reardon by shooting her with a pistol while he was engaged in the commission of rape in the first degree upon the person of Carlotta Reardon.

Count II of the indictment provided:

> Bradley Scott Russell committed the offense of rape in the first degree by engaging in sexual intercourse with Carlotta Reardon through the use of forcible compulsion in which she received serious physical injury.

Appellant's counsel subsequently moved for a bill of particulars and made numerous other discovery motions. The response to the bill of particulars stated that the shooting occurred first with the rape occurring immediately thereafter and that

the victim was incapable of consent [to the rape] as a result of a gunshot wound to the head which occurred immediately prior to the sexual intercourse.

On September 23, 1986, appellant, who was sixteen (16) years old at the time, withdrew his plea of not guilty pursuant to a plea bargain whereby he pled guilty to murder and rape in the first degree in exchange for two twenty-year sentences to run concurrently. Appellant also agreed that he would not be eligible for parole for twelve (12) years pursuant to KRS 439.3401.

On February 25, 1994, appellant filed an RCr 11.42 motion alleging the indictment was defective, ineffective assistance of counsel, that his plea was not entered voluntarily, and that the court could not sentence appellant under KRS 439.3401. The court held an extensive evidentiary hearing on the matter in which appellant's trial attorney, Kevin McNally, testified at length. The court entered its findings of fact and conclusions of law denying the motion on October 8, 1996. This appeal followed.

■ Appellant first argues that the indictment was defective because under KRS 510.010, one cannot be convicted of raping a corpse. In reviewing the language of the indictment, the facts state that appellant killed the victim while he was raping her and raped her through the use of force which resulted in serious physical injury. There is no suggestion in the indictment that appellant raped the victim after he had already killed her. RCr 6.10(2) states:

> The indictment or information shall contain, and shall be sufficient if it contains, a plain, concise, and definite statement of the essential facts constituting the specific offense with which the defendant is charged. It need not contain any other matter not necessary to such statement, nor need it negative any exception, excuse or proviso contained in any statute creating or defining the offense charged.

An indictment is sufficient if it informs the accused of the specific offense with which he is charged and does not mislead him. *Wylie v. Commonwealth*, Ky., 556 S.W.2d 1 (1977).

■ KRS 510.040(1)(a) provides that one is guilty of rape in the first degree when [h]e engages in sexual intercourse with another person by forcible compulsion. The facts as alleged in the indictment against appellant fit the statutory definition of rape and set out sufficient facts to enable appellant to defend against the charge. The fact that the evidence in the case may have been contrary to the facts as alleged in the indictment (that the appellant killed the victim before he sexually assaulted her) does not render the indictment defective. RCr 5.10 provides that no indictment shall be quashed or judgment of conviction reversed on the ground that there was not sufficient evidence before the grand jury to support the indictment. Once the defendant has been indicted, the issue of sufficiency of the evidence is to be determined at trial.

■ Appellant's next argument is that his counsel on the guilty plea rendered ineffective assistance by advising him to plead guilty to the rape charge. To prevail on a claim of ineffective assistance of counsel where the defendant pled guilty, the defendant must show that counsel's performance was deficient relative to current professional standards, and that had counsel's performance not been deficient, the defendant would not have pled guilty and the outcome would have been different. *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *Shelton v. Commonwealth*, Ky.App., 928 S.W.2d 817 (1996). Appellant maintains that because the evidence was undisputed that appellant had sex with the victim after she was already dead and it had already been established under the law that one cannot be convicted of raping a corpse, attorney McNally's advice to appellant to plead

guilty to the rape charge constituted ineffective assistance.

In *Smith v. Commonwealth*, Ky., 722 S.W.2d 892 (1987), the Court recognized the 1974 Commentary to Chapter 510 of the Kentucky Revised Statutes which states that sexual intercourse with a dead body is not penalized as rape, but the offense is prohibited by the abuse of a corpse statute, KRS 525.120. *Id.* at 893–894. Prior to appellant's guilty plea, appellant moved, first, the district court and then the circuit court, to dismiss the rape charge based on the fact that the evidence was that the victim was killed before she was raped. Both motions were denied.

At the RCr 11.42 hearing, appellant presented the testimony of Dr. John Hunsaker, Associate Chief Medical Examiner for the State of Kentucky. Dr. Hunsaker testified consistent with the autopsy that the victim was killed instantly when she was shot in the head. However, on cross-examination, Dr. Hunsaker testified that certain body functions can continue after one is considered brain dead.

Attorney McNally testified at the hearing that he was aware that the status of the law at the time of the plea was that a defendant could not be convicted of raping a corpse. He nevertheless advised appellant to plead guilty to the rape for several reasons. First, his argument that appellant could not be convicted of rape had already been rejected by the circuit judge on the case and he knew it was unlikely that Judge Corns would change his mind at trial. Given that fact, he felt it was probable, due to the heinous nature of the crime and appellant's confession, that the jury would convict appellant of murder and rape in the first degree. McNally stated that he did not believe he could get a jury to buy the fact that the victim was not raped simply because appellant had killed her first. McNally additionally expressed concern that the Commonwealth may have been able to present evidence that the victim was alive at the time of the sexual assault. In fact, that was the basis of the circuit court's ruling rejecting appellant's motion to dismiss the rape charge. The circuit court found that it was a question for the jury because there was medical evidence that certain body functions continue after brain death. McNally also testified that he was seriously concerned about the appellant receiving the death penalty. He felt the plea bargain was very favorable because, even if the rape charge was at some point reversed or dismissed, the minimum appellant could receive on the murder charge would be twenty years, which was the same amount of time appellant got with the two concurrent twenty-year sentences pursuant to the plea agreement. Finally, McNally testified that he wanted appellant to get treatment as soon as possible because of his young age, his mental state at the time, and the fact that he would someday be released. McNally felt that a trial would simply prolong said treatment.

 Advising a defendant to plead guilty does not, in and of itself, constitute ineffective assistance of counsel. *Beecham v. Commonwealth*, Ky., 657 S.W.2d 234 (1983). There is a strong presumption that, under the circumstances, the actions of counsel might be considered sound trial strategy. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A reviewing court, in determining whether counsel was ineffective, must be highly deferential in scrutinizing counsel's performance, and the tendency and temptation to second guess should be avoided. *Harper v. Commonwealth*, Ky., 978 S.W.2d 311 (1998). We must look to the particular facts of the case and determine whether the acts or omissions were outside the wide range of professionally competent assistance. *Id.*

 In our view, McNally's advice to appellant to accept the plea bargain and plead guilty to rape was sound trial strategy under the circumstances. McNally had made every attempt to have the rape charge dismissed prior to trial and it was

clear that the circuit court was not going to grant the motion. Given the nature of the crimes and appellant's confession, his conviction on rape and murder was all but certain. Also, due to the uncertainty surrounding the issue of when death occurred, we cannot say that a reversal on appeal would have been guaranteed. In any event, the twenty-year sentence on both convictions under the plea was the minimum sentence appellant would have received had he been tried and convicted solely on the murder charge. Appellant was facing the serious possibility of receiving the death penalty, and we will not second guess his counsel's advice which allowed appellant to completely avoid this possibility. Accordingly, we cannot say that appellant's counsels performance was ineffective.

■ Appellants remaining arguments are that appellant did not enter his plea knowingly and voluntarily and that the court did not have the authority to sentence appellant pursuant to KRS 439.3401. In the plea agreement, appellant agreed that he would not be eligible for parole for a minimum of twelve (12) years according to KRS 439.3401, which was not to be effective until July 15, 1986, which was subsequent to the date of the offenses. The plea agreement informed appellant of this fact by specifically stating that the statute was being applied retroactively.

■ We see nothing wrong with appellant being bound by the twelve-year minimum of service before parole eligibility. Although a sentence pursuant to a guilty plea must be imposed within the limits prescribed by law, see *Commonwealth v. Corey*, Ky., 826 S.W.2d 319 (1992), parole eligibility is a separate matter. Parole is not a right, but a privilege, granted or withheld within the discretion of the parole board. *Commonwealth v. Polsgrove*, 231 Ky. 750, 22 S.W.2d 126 (1929). Parole is simply a form of conditional release from imprisonment in which the convict is released before the expiration of his sentence on certain conditions.

*Board of Prison Commrs. v. DeMoss*, 157 Ky. 289, 163 S.W. 183 (1914). Furthermore, the twelve-year minimum agreed to by appellant was not outside of the law as it existed at the time of the offense. See KRS 349.340. Appellant could have easily served more than twelve years under the then existing parole laws. Appellant merely agreed to a greater minimum eligibility for parole (twelve years instead of ten years). There was no guarantee that appellant would have been released in ten years.

■ As to the voluntariness of the plea, the test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among alternative courses of action open to the defendant. *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). There must be an affirmative showing in the record that the plea was voluntarily made. *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). In reviewing the record, including the record of the plea proceedings, we believe appellant's plea was voluntarily, intelligently, and knowingly made. The record of the plea revealed that the court engaged in a lengthy colloquy to insure that appellant and his parents were informed of all of the constitutional rights he was waiving by pleading guilty. The court also extensively reviewed the terms of the plea agreement, including the fact that appellant would not be eligible for parole for twelve (12) years. There was nothing in the record indicating that appellant failed to understand his constitutional rights or the terms of his plea.

For the reasons stated above, the judgment of the Franklin Circuit Court is affirmed.

ALL CONCUR.