RENDERED:  MAY 10, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0556-MR

ROBERT SHADWICK                                                   APPELLANT


APPEAL FROM OHIO CIRCUIT COURT
v.          HONORABLE THOMAS O. CASTLEN, SPECIAL JUDGE
ACTION NO. 17-CR-00067


COMMONWEALTH OF KENTUCKY                                          APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CETRULO, GOODWINE, AND A. JONES, JUDGES.

JONES, A., JUDGE:  Robert Shadwick appeals from the Ohio Circuit Court's

order denying the motion to vacate his sentence pursuant to RCr[1] 11.42.  After a

thorough review of the record and the law, we affirm.

---

[1]  Kentucky Rules of Criminal Procedure.

# I. BACKGROUND

On November 14, 2016, Jordana Ortiz and her associates, Aimer Silvestre-Sargento and Robert Shadwick, broke into the home of James Sacerich in Beaver Dam, Kentucky. Until recently, Ortiz had resided in Sacerich's home, and she was extremely angry when Sacerich expelled her from the premises. According to Sacerich, Ortiz told him that "he would be sorry." Bent on revenge, Ortiz contacted Silvestre-Sargento and Shadwick and, with their assistance, broke into and ransacked Sacerich's house. Fortunately, Sacerich was not home at the time. The trio left Sacerich's home with an assortment of valuables, most notably his television and a collection of silver coins and paper currency.

Apparently unsatisfied with the haul, Ortiz and her associates then went to the home of Sacerich's mother, Carolyn Henson. Henson was home when they arrived. Using the ruse of claiming he lost his cell phone, Silvestre-Sargento asked Henson if he could use her telephone. When Henson's back was turned, Silvestre-Sargento grabbed Henson and pushed her inside. He then placed her in a headlock and held a handgun to her head. While Henson was restrained at gunpoint, Ortiz and Shadwick entered the home and began searching for valuables. At some point, one of the three struck Henson in the face, breaking her nose. Ortiz and her associates eventually left the premises with Henson's cash and jewelry, stealing Henson's vehicle to make their escape.

Henson recognized Ortiz through her association with her son, and she identified Ortiz to the Beaver Dam police. Following their investigation, the officers arrested Ortiz, Silvestre-Sargento, and Shadwick as the perpetrators of the two home invasions. Based on the aforementioned incidents, the grand jury indicted Shadwick on the following charges: (1) one count of first-degree robbery;[2] (2) one count of second-degree assault;[3] (3) one count of first-degree wanton endangerment;[4] (4) one count of first-degree unlawful imprisonment;[5] (5) two counts of theft by unlawful taking (over $500.00);[6] (6) two counts of first-degree burglary;[7] (7) one count of third-degree criminal mischief;[8] (8) one count of possession of a handgun by a convicted felon;[9] and (9) one count of being a first-

---

[2] Kentucky Revised Statutes (KRS) 515.020, a Class B felony.

[3] KRS 508.020, a Class C felony.

[4] KRS 508.060, a Class D felony.

[5] KRS 509.020, a Class D felony.

[6] KRS 514.030, a Class D felony at the time of the offense. In 2021, the General Assembly amended the statute to redefine theft of property worth between $500 and $1000 as a Class A misdemeanor. 2021 Ky. Acts ch. 6, § 8 (effective Jun. 29, 2021).

[7] KRS 511.020, a Class B felony.

[8] KRS 512.040, a Class B misdemeanor.

[9] KRS 527.040, a Class C felony.

degree persistent felony offender (PFO).[10]  At Shadwick's joint trial with Silvestre-Sargento, the jury heard testimony from Sacerich, Henson, and the investigating police officers.  The Commonwealth also introduced testimony from Ortiz, who had previously negotiated a guilty plea for her role in these two incidents.  Ortiz testified regarding her motive for robbing Sacerich, and she identified Silvestre-Sargento and Shadwick as her accomplices.

At the conclusion of the initial guilt phase of the trial, the jury found Shadwick guilty of first-degree robbery, first-degree unlawful imprisonment, first-degree burglary, and second-degree burglary.[11]  However, *before* the jury could hear evidence in the next phase regarding the charges of being a felon in possession of a handgun and being a first-degree PFO, Shadwick's defense counsel negotiated a deal with the Commonwealth.  In exchange for Shadwick's guilty plea, the Commonwealth agreed to dismiss the handgun and PFO charges and to recommend a concurrent term of thirty years' imprisonment.  The trial court then gave Shadwick an exceedingly thorough plea colloquy.  Shadwick affirmed that he

---

[10]  KRS 532.080(3).  Pursuant to KRS 532.080(6)(a), an individual convicted of a Class A or Class B felony who is also found to be a first-degree PFO faces an enhanced sentence of twenty to fifty years in prison, or life imprisonment.

[11]  KRS 511.030, a Class C felony.  From the record, it appears that the burglary count related to the Sacerich incident was downgraded from first-degree burglary to second-degree because no one was home at the time, and so there was no evidence of "explosives or a deadly weapon," "physical injury to any person who is not a participant in the crime[,]" or the use or threatened use of "a dangerous instrument against any person who is not a participant in the crime."  KRS 511.020(1)(a)-(c).

understood the constitutional rights he was giving up by taking the plea. He acknowledged he was not mentally ill or under the influence of drugs or alcohol, and that he was not threatened or promised anything aside from the negotiated term of thirty years' incarceration. Shadwick also affirmed that he was satisfied with the services provided by his attorney and that he had no complaints regarding his representation. Finally, the trial court questioned Shadwick on each count of the indictment, and Shadwick admitted the details and his guilt to each one. The trial court thereafter accepted Shadwick's guilty plea.

Approximately one month later, at the sentencing hearing, the trial court sentenced Shadwick to a concurrent term of thirty years' imprisonment, in accordance with Shadwick's negotiated plea. Nearly three years later, Shadwick filed a *pro se* motion to vacate his sentence pursuant to RCr 11.42. The trial court denied relief in its written order entered on March 27, 2023, without conducting an evidentiary hearing. This appeal followed.

## II. ANALYSIS

A successful petition for relief under RCr 11.42 based on ineffective assistance of counsel must survive the twin prongs of "performance" and "prejudice" provided in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), *accord Gall v. Commonwealth*, 702 S.W.2d 37 (Ky. 1985). The "performance" prong of *Strickland* requires as follows:

> Appellant must show that counsel's performance was deficient. This is done by showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment, or that counsel's representation fell below an objective standard of reasonableness.

*Parrish v. Commonwealth*, 272 S.W.3d 161, 168 (Ky. 2008) (internal quotation marks and citations omitted). The "prejudice" prong requires a showing that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Commonwealth v. McGorman*, 489 S.W.3d 731, 736 (Ky. 2016) (quoting *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052).

Both *Strickland* prongs must be met before relief pursuant to RCr 11.42 may be granted. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052. This is a very difficult standard to meet. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 1485, 176 L. Ed. 2d 284 (2010).

On appeal, Shadwick contends the trial court erred when it denied his motion without an evidentiary hearing on the ineffectiveness of his trial counsel. First, Shadwick claims that his trial counsel "used the threat of a life sentence to coerce [him] to enter into a plea agreement for a sentence of thirty (30) years' imprisonment." (Appellant's Brief at 6.) Specifically, Shadwick argues it was

"highly unlikely" that the jury would have given him a life sentence, and that it was likely that the jury would have given him a sentence similar to the pleaded term. Therefore, according to Shadwick, his trial counsel "compelled him" to enter into a plea agreement which did not benefit him and which "forced him to give up all of his appeal issues." (Appellant's Brief at 6.) Second, Shadwick claims that his trial counsel failed to discuss his appeal issues with him in such a way as to enable him to make an intelligent and voluntary decision.

Shadwick's arguments are refuted by both the law and the facts in the record. "Advising a defendant to plead guilty does not, in and of itself, constitute ineffective assistance of counsel." *Russell v. Commonwealth*, 992 S.W.2d 871, 875 (Ky. App. 1999). Additionally, trial counsel's advice regarding a potential sentence is not coercive when the advice is based on accurate information. *Roach v. Commonwealth*, 384 S.W.3d 131, 139 (Ky. 2012); *Commonwealth v. Elza*, 284 S.W.3d 118, 122 (Ky. 2009). Despite Shadwick's characterization of his counsel's advice as "the threat of a life sentence," it is undoubtedly correct that (1) Shadwick's jury had convicted him of *two* Class B felonies in the guilt phase; (2) based on his extensive criminal record, Shadwick faced the near-certainty of being convicted of a first-degree PFO in the next phase of the trial; and (3) the resulting PFO enhancement of a Class B felony would have led to a sentence of twenty to

fifty years or a life sentence. Even if Shadwick felt "threatened" by the prospect of a life sentence, his trial counsel's advice was not coercive because it was accurate.

Additionally, Shadwick's contention that the jury was "likely" to give him a sentence similar to his pleaded term is entirely speculative. Speculative claims, *i.e.*, "claim[s] that certain facts *might* be true . . . cannot be the basis for RCr 11.42 relief." *Mills v. Commonwealth*, 170 S.W.3d 310, 328 (Ky. 2005), *overruled on other grounds by Leonard v. Commonwealth*, 279 S.W.3d 151 (Ky. 2009). Furthermore, it is worth noting that Shadwick's trial counsel successfully negotiated a plea *after* the jury convicted Shadwick of the underlying criminal charges, which included two Class B felonies. "In the guilty plea context, to establish prejudice the challenger must demonstrate a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Stiger v. Commonwealth*, 381 S.W.3d 230, 237 (Ky. 2012) (internal quotation marks and citations omitted). The negotiated plea agreeing to thirty years' imprisonment was reasonable when the likely alternative would have been an enhanced sentence of twenty to fifty years or a life sentence.

For his second issue on appeal, Shadwick contends his trial counsel did not discuss his appeal issues with him. This claim is refuted by the record surrounding Shadwick's plea colloquy. The trial court specifically asked Shadwick whether his trial counsel had explained his appealable issues in the plea

colloquy, and Shadwick responded affirmatively. Shadwick's trial attorney also stated that he had discussed the plea with Shadwick. "Solemn declarations in open court carry a strong presumption of verity." *Elza*, 284 S.W.3d at 121 (quoting *Edmonds v. Commonwealth*, 189 S.W.3d 558, 569 (Ky. 2006)). However, we acknowledge that "the validity of a guilty plea is determined not by reference to some magic incantation recited at the time it is taken[.]" *Kotas v. Commonwealth*, 565 S.W.2d 445, 447 (Ky. 1978). For cases in which a defendant disputes the voluntariness of a plea, trial courts are required "to consider the totality of the circumstances surrounding the guilty plea[.]" *Bronk v. Commonwealth*, 58 S.W.3d 482, 486 (Ky. 2001) (footnote omitted).

During a hearing held on Shadwick's RCr 11.42 motion, the trial court found nothing to disturb its conclusion that Shadwick's plea was knowing, voluntary, and intelligent. The trial court also viewed Shadwick's motion as being without any real substance, agreeing with the Commonwealth that the allegations were refuted by the record. One of the appealable issues cited by Shadwick includes an allegation that he was identified by Ortiz, who had struck a plea deal with the Commonwealth. However, the trial court correctly found that the jury was aware of Ortiz's plea. In another example, Shadwick asserts that his counsel should have asked for a mistrial when a witness accidentally wandered into the

jury room.  However, the trial court ascertained that the jury was not deliberating at the time, and no improper contact took place.

Based on these considerations, we discern no error in the trial court's denial of Shadwick's motion.  "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."  *Elza*, 284 S.W.3d at 122 (citations omitted).  For these reasons, "[t]he trial court properly rejected [Shadwick's] motion without conducting an evidentiary hearing."  *Id*.

### III. CONCLUSION

For the foregoing reasons, we affirm the Ohio Circuit Court's order denying relief pursuant to RCr 11.42.

ALL CONCUR.

BRIEF FOR APPELLANT:

Robert T. Shadwick, *pro se*
Eddyville, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Stephanie L. McKeehan
Assistant Attorney General
Frankfort, Kentucky